STATE of North Dakota, Plaintiff and
Respondent,

v.

Arnold HANSON, Defendant and Appellant.

Cr. 265.

Supreme Court of North Dakota.

Nov. 21, 1955.

Aaron Aronson, Fargo, for defendant and appellant.

Lyle E. Huseby, State's Atty., and Frank T. Knox, Asst. State's Atty., Fargo, for plaintiff and respondent.

JOHNSON, Judge.

On November 17, 1954, in the county court of increased jurisdiction of Cass County, North Dakota, the defendant was convicted by a jury of the crime of operating a motor vehicle while under the influence of intoxicating liquor. He has appealed.

On August 27, 1954, between 8:00 and 8:30 p.m., the defendant was driving his automobile on Highway Ten in an easterly direction approximately twenty-seven miles west of Fargo, North Dakota. Highway

Patrolman Koehn was also driving in the same direction behind the defendant. He noticed that the defendant swung across the center line of the highway and then onto the shoulder of the highway a couple of times. His attention was attracted to the defendant's manner of driving by a cloud of dust created by his car each time he reached the south shoulder of the highway. The swerving manner in which the defendant drove his car caused the patrolman to stop him, arrest him and transport him to the county jail at Fargo, North Dakota.

The defendant has assigned five specifications of error on which this appeal is based. Four of the specifications there relate to rulings of the trial court in the admission of evidence. One relates to the court's instructions to the jury relating to the definition of intoxicated or under the influence of intoxicating liquor. We discuss these as presented by the appellant.

The first specification cited relates to a question put to Mr. Koehn, the highway patrolman:

"Now, Mr. Koehn, did you have an opportunity to observe whether or not the defendant was under the influence of intoxicating liquor? Answer 'Yes' or 'No'. A. Yes.

"Q. And what is your opinion as to whether or not he was under the influence of intoxicating liquor?"

This was objected to as "calling for an opinion; not based on sufficient facts; not having any foundation for showing."

"The Court: Well, of course, the rule is that opinion isn't admissible. On that question, overruled.

"Mr. Knox: Go ahead. A. That he was under the influence of intoxicating liquor."

The defendant presented no argument in his brief on appeal on this specification. Errors assigned in brief, but not argued, may be deemed abandoned. Kelly v. Pierce, 16 N.D. 234, 112 N.W. 995,

12 L.R.A.,N.S., 180; Olson v. Armour & Co., 68 N.D. 272, 276, 280 N.W. 200, 201.

The issue here involved is whether or not the defendant was under the influence of intoxicating liquor at the time he was operating his motor vehicle, on his way to Fargo, on the evening of August 27, 1954. The patrolman had testified to the facts and circumstances that indicated that the defendant was under the influence of liquor at the time of his arrest. He described how the defendant had driven just prior to his arrest. Upon the arrest of the defendant and while observing him, the officer detected the smell of alcohol from his breath. The defendant's eyes were starey and when he got out of his car, he was unsteady when he walked and his body swayed. The patrolman suggested that the defendant had "quite a bit to drink" to which he said the defendant responded that he did not have too much to drink. He further testified the defendant told him that he had a "fifth" from ten o'clock in the morning until the patrolman saw him.

The defendant took the stand in his own behalf. He admitted that he had had "two shots of whiskey" between two and three-thirty that day. He denied that he had any intoxicating liquor after that time. He denied that he had told the patrolman that he had had a fifth of whiskey; that he had said:

"I says that if this would have happened a week ago when I was on vacation, I would have told you probably a fifth of whiskey."

He denied that on the way to Fargo, a distance of about twenty-seven miles he had had any conversation with Patrolman Koehn regarding a blood test. On cross-examination the defendant was asked:

"Q. Well, now, didn't you state during that trip into town to Officer Koehn that you could not take the blood test because 30% is drunk, and you had probably 50% in your blood because you had been drinking for ten days?

138

"Mr. Aronson: I object, Your Honor, please. That question is not a matter that was brought up in direct examination.

"The Court: Well, the rule is that when the defendant takes the stand, he can be questioned on anything that took place—any part of the conversation. The state could not bring this up except on cross-examination where it's permissible on two grounds, one being for impeachment purposes and the other as part of the res gestae.

"Mr. Aronson: It's not a matter brought out in direct examination.

"The Court: Well, that's true—well, you mean on direct."

The question was then repeated and the defendant answered:

"A. No, I did not make that statement."

It is further specified that the court erred in overruling the defendant's objection to the following question:

"Q. Did you state at that time to Mr. Koehn, 'If you will not put me in jail, I will take the blood test'?

"Mr. Aronson: I object to the question as bringing out testimony that's not been shown, and it's done for the purpose of prejudice—it's very prejudicial.

"The Court: Overruled. It's admissible for the purpose of impeachment."

The defendant again denied having made the statement.

The defendant was then asked if he had been taken to St. John's Hospital for a blood test, and that he had refused to take it; that he had refused to sign the consent for it. The defendant admitted that he was taken to the St. John's Hospital but denied that he had agreed to take the test. At the conclusion of this testimony motion was made to strike it on the ground that it was prejudicial and brought out to influence the jury. The motion was denied. If this was proper cross-examination, then the motion to strike was properly denied.

The early case of State v. Kent, 5 N.D. 516, 67 N.W. 1052, 35 L.R.A. 518, sets out in broad outline the general scope allowed in cross-examination of a defendant. There are numerous ways of impeaching the credibility of a witness, and the defendant was a witness in his own behalf, by cross-examination, by proving previous contradictory statements or acts, by producing record of conviction of a crime, by adducing generally evidence tending to show that the witness is unworthy of belief. Evidence impeaches a witness when it assails his general credibility or otherwise weakens the force of his testimony and detracts from the weight to be given it. In State v. Kent, supra, 5 N.D. at pages 547–548, 67 N.W. at page 1060, it was said:

"But, while the strict rule limits the cross-examination to the subjects about which the witness testified in chief, this does not mean the particular facts to which the witness directed his testimony. *Any subject that has been opened may be exhausted.* A defendant, on the witness stand, cannot testify to just such facts as may be in his favor, and, by stopping there, preclude inquiry into all the facts pertaining to the subject. See cases already cited. There are statutes in some of the states limiting the cross-examination of defendants in criminal cases, and, under these statutes, a stricter rule of cross-examination has been enforced by the courts. But we have no such statute in this state, *and certainly the administration of justice does not require this limitation upon the ascertainment of truth."* (Emphasis supplied.)

The defendant by his own testimony, while admitting some drinking in the early afternoon, denied drinking thereafter that day, thereby implying that at the time of the accident he was not under the

influence of intoxicating liquor. Having opened up the subject in his own testimony it was entirely proper and relevant to the examination in chief to allow the state to interrogate him concerning the conversation about a blood test, and other statements made by the accused in that connection.

"It is also well established that, when a defendant in a criminal case voluntarily takes the witness stand in his own behalf, he thereby subjects himself to the same rules of cross-examination that govern other witnesses, * * *." State v. Kent, supra, 5 N.D. at page 541, 67 N.W. at page 1058.

A defendant cannot be compelled to testify. But when he voluntarily does so, he waives his constitutional privilege of not being required to give evidence tending to incriminate him, to impeach him, and he may be asked questions as to other offenses the same as any other witness. State v. Kent, supra. Where an accused voluntarily takes the witness stand in his own behalf, he waives his constitutional privilege of not answering proper questions that may tend to convict him of the crime for which he is on trial and he subjects himself to the same rules that govern other witnesses as to cross-examination and impeachment. When he voluntarily offers testimony upon any fact, the same constitutes a waiver as to all other relevant facts because of the necessary connection between them all. 58 Am.Jur, Witnesses, Sec. 96, p. 80. See also Wigmore, Evidence, 3rd ed., Sec. 2276(2), p. 441. The rules of evidence in civil cases are also applicable in criminal cases, except as otherwise provided in Title 29, Judicial Procedure, Criminal, Section 29–2112, ND RC 1943.

We find no error in the rulings of the trial court.

We will next determine whether there was error in the definition of the trial court as to the meaning of the phrase, "under the influence of intoxicating liq-

uor." The trial court instructed in that regard as follows:

"On the question of intoxication, I charge you that under the law and within the issues of this case, a person is intoxicated or under the influence of intoxicating liquor when his mental and physical functions have become abnormal to some slight or great extent from the use of intoxicating liquor. It is immaterial whether the amount of liquor consumed was large or small."

It is argued that under this instruction a normal and conscientious jury would be bound to find the defendant guilty if he had had any liquor at all; that this instruction over-emphasizes the fact that taking any amount of liquor would necessitate that the jury find the defendant guilty; that the instruction gave the jury an erroneous impression as to the degree of proof required.

The instructions, of course, must be considered in their entirety. Ramage v. Trepanier, 69 N.D. 19, 283 N.W. 471; Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11. Immediately after the instruction alleged as error, the court said:

"It depends upon how it affects his mental processes and bodily functions."

The defendant here is not charged with being intoxicated, but being under the influence of intoxicating liquor. If he was, in fact, intoxicated, he was of course under the influence of intoxicating liquor. But he could well be under the influence of intoxicating liquor without being intoxicated. The expression "under the influence of intoxicating liquor" simply means having drunk enough to disturb the action of the physical or mental faculties so that they are no longer in their natural or normal condition; that therefore, when a person is so affected by intoxicating liquor as not to possess that clearness of intellect and control of himself that he would otherwise have, he is "under the influence of

intoxicating liquor" and this is the common and well-known understanding of the expression. See 43 C.J.S., Influence, p. 378; State v. Graham, 176 Minn. 164, 222 N.W. 909. It is also commonly known that there is a great variation in the effect that liquor produces upon individuals. The quantity of liquor taken by one individual, which does not seem in any way to affect him, may cause another to lose that clearness of intellect and control that he would otherwise have had. It clearly is not the *amount involved,* but the effect that determines whether the person is under the influence of intoxicating liquor.

 It has been held also that a person who has taken a drink of intoxicating liquor is not necessarily under its influence, but if it affects the person's control to the *slightest degree,* and he is less able, either mentally or physically, or both, to exercise a clear judgment and steady hands necessary to handle an automobile with safety to himself and the public, he is "under the influence of intoxicating liquor" within the meaning of the statute making it unlawful to operate an automobile while under the influence of intoxicating liquor, NDRC 1953 Supp. 39–0801. State v. Sisneros, 42 N.M. 500, 82 P.2d 274. Other expressions are found in other cases dealing with the definition of the statement "under the influence of intoxicating liquor." In the case of Latimer v. Wilson, 130 N.J.L. 159, 134 A. 750, it was held that the expression covers not only all of the well-known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging *in any degree in intoxicating liquors* and which tend to deprive an individual of that clearness of intellect and control of himself which he would otherwise possess. To the same effect see the case of Packard v. O'Neil, 45 Idaho 427, 262 P. 881, 56 A.L.R. 317. The expression has also been defined: "As any influence which lessens in any appreciable degree the ability of the accused to handle his automobile", and has been held to cover "any abnormal mental or physical condition, and the lessening *in the slightest or any degree*

of the accused's ability to operate a vehicle." State v. Hurd, 5 Wash.2d 308, 105 P.2d 59, 62.

While the definition of the trial court is not in the exact words of the cases referred to, its purport and meaning are the same. These cases indicate as was said by the trial court in the instruction, "That it is immaterial whether the amount of liquor consumed was large or small." The measure of its effect upon the mental and bodily processes of the individual determines whether he was under the influence of intoxicating liquor which to any degree affected his ability to operate his automobile within the meaning of the statute prohibiting the operation thereof while "under the influence of intoxicating liquor." The instruction was not erroneous.

We find no prejudicial error. The judgment of conviction is affirmed.

BURKE, C. J., and SATHRE, MORRIS and GRIMSON, JJ., concur.