STATE of North Dakota, Plaintiff and Respondent,

v.

Marvin C. MILLER, Defendant and Appellant.

Cr. No. 327.

Supreme Court of North Dakota.

Nov. 10, 1966.

Lowell W. Lundberg, Asst. State's Atty., Fargo, for plaintiff and respondent.

George E. Duis, Fargo, for defendant and appellant.

STRUTZ, Judge.

The defendant was charged with the crime of operating a motor vehicle on the public highways while under the influence of intoxicating liquor. He was found guilty by a jury in county court of Cass County, and takes this appeal from the verdict of the jury and from the judgment of conviction entered against him.

In support of his appeal, the defendant lists a number of assignments of error, most of these assignments being based on the admission into evidence of the result of a Breathalyzer test administered to the defendant by one of the highway patrolmen.

The facts out of which the charge against the defendant arose were as follows:

The defendant was driving his pickup truck on U. S. Highway No. 10 on the evening of December 14, 1963. He made a sharp turn off that highway onto a county road, making this maneuver with a loud screech or noise. As he turned his vehicle onto the county road, he passed an automobile in which Highway Patrolman Don Peterson was sitting. Peterson followed the defendant's pickup and observed him drive onto the right shoulder of the county road, cross over to the left side of the road, and then recross the road to the right side. After this had occurred several times, Officer Peterson turned on his siren and, by the use thereof and the red flashing light on the top of the patrol car, got the defendant to pull over to the side of the road and stop.

Officer Peterson then asked the defendant for his driver's license. Because of the darkness, the defendant was requested to walk over to the patrol car which had been stopped a short distance from the defendant's pickup. As the defendant walked to the officer's car, he swayed and staggered and did not walk in a normal manner. In speaking with the defendant, the officer smelled liquor on his breath. The defendant then admitted to Officer Peterson that he had been drinking. At this point, the defendant was informed that he was being placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor.

While Officer Peterson and the defendant were in the patrol car, a neighbor of the defendant came by and offered to drive

the defendant's pickup home. Officer Peterson then took the defendant to the county jail in Fargo, where thorough interrogation took place.

When they arrived at the jail, the defendant consented to take a Breathalyzer test to determine whether he was, in fact, intoxicated. Another member of the patrol, Officer Hoop, who had been summoned by radio by Officer Peterson, came to administer the Breathalyzer test.

While at the jail, Officer Peterson again observed the defendant closely. His face was flushed, his clothes were soiled, his eyes were bloodshot with pupils dilated, and he appeared to be sleepy. From his observation of the defendant, Officer Peterson stated that he believed the defendant to be intoxicated.

Officer Peterson's description of the defendant and of defendant's actions was corroborated in part by Officer Hoop, who came to administer the Breathalyzer test. The record discloses that Officer Hoop had taken a forty-hour course in the giving of breath tests on the instrument known as the "Breathalyzer." This course of instruction had been given by the inventor of the device, and, as a result of such training, Officer Hoop knew how to operate the machine mechanically and was able to calculate the percentage of alcohol in the defendant's blood. He testified as to successive steps taken in giving the test. The result of the Breathalyzer test indicated that the defendant's blood registered fourteen hundredths of one per cent alcohol by weight. Our statute provides that any person having ten hundredths of one per cent or more by weight of alcohol in his blood is presumed to be under the influence of intoxicating liquor. Sec. 39–20–07(3), N.D.C.C., as amended. Thus the result of this test, if the test was valid, clearly indicated that there was a presumption that the defendant was operating his motor vehicle while under the influence of intoxicating liquor.

Witness R. W. Prouty also testified for the State. He is the State Toxicologist and an associate professor at the North Dakota State University, holding a degree in chemistry. The record discloses that he is well qualified in his field, both in training and in experience. The witness testified that shipments of five or six cases of ampoules used in the operation of a Breathalyzer are ordered at one time, each case containing some 200 ampoules. These ampoules are sealed glass containers which are made and compounded by the manufacturer of the Breathalyzer in Switzerland. Each lot in the shipment of ampoules so received from the manufacturer has a control number which is stamped on each individual ampoule in each lot of every shipment. When a new shipment is received, a spot-check is made of a certain number of the ampoules in each lot. In making this spot-check, the ampoule which is to be checked is broken, and, once the glass is broken for the purpose of such spot-check, the contents cannot thereafter be used in the operation of the Breathalyzer.

By such spot-checks of the ampoules in the shipment from which the ampoule used in this case was taken, the contents of the ampoule so checked were found to be of the proper chemical composition. The record further shows that the Breathalyzer used in this case was checked periodically. It had been checked in October of 1963, sometime prior to its use in this case, and again in January 1964, shortly after its use in the instant case. In both of these instances, it was found to be properly calibrated and in perfect working order.

The defendant raises a number of issues, contending that the introduction of the results of the Breathalyzer test was error, for the following reasons:

1. That the State failed to lay a proper foundation for the introduction of the results of such test because no foundation was laid permitting the use of the particular

chemicals that were used in the test given to the defendant in this case;

2. That the test was not administered by a qualified operator, since Patrolman Hoop knew nothing about electronics and therefore was not qualified to give the test;

3. That the Breathalyzer was not approved by statute or by the National Safety Council and the American Medical Association, as required by Section 39–20–07(5), North Dakota Century Code, and that the verdict of guilty returned by the jury in this case was not justified by the evidence produced by the State, and that the verdict was contrary to law; and

4. That the use of the Breathalyzer was a violation of the defendant's constitutional right not to be forced to testify against himself.

We shall consider these issues raised by the defendant in the order in which they are listed above.

■ Did the State fail to lay a proper foundation for the use of the results of the Breathalyzer test because it failed to show that the particular ampoule used in the test given to the defendant contained the proper chemicals and that such chemicals were in proper proportion? The defendant admits that it would be impossible to check the individual ampoule used in any test and still use that ampoule or its contents in giving the test. In other words, if the defendant is correct in his contention that the contents of each ampoule used will have to be tested before it can be used in the giving of any test, the use of the Breathalyzer would be made practically impossible. The record shows that shipments of sealed ampoules are delivered by the manufacturer of the Breathalyzer machine for exclusive use in that machine. These shipments are spot-checked as they are received, and those ampoules checked were found to contain the proper chemicals, in the proper proportions.

We believe that the fact that the sealed ampoules are received by the State from the manufacturer of the machine for use in the specific machine known as the Breathalyzer, and the further fact that such ampoules received in each shipment were spot-checked and were found to contain the proper chemicals, in the proper proportions, is sufficient prima-facie proof that the chemicals in any one ampoule are the proper kind, and that they are properly mixed. We believe that the State thus laid a sufficient foundation for the use of these chemicals in the Breathalyzer test given to the defendant. See State v. Baker, 56 Wash.2d 846, 355 P. 2d 806.

■ The defendant next contends that the results of the test given to the defendant were inadmissible in evidence because the test was not administered by a proper operator, one who is trained in electronics. We do not believe there is any merit to this contention. The record shows that Officer Hoop, who administered the test, had successfully completed a forty-hour course in the mechanical operation of the Breathalyzer, and that he knew how to operate the machine and to read the results and to calculate the percentage of alcohol in the blood of the person being tested. This testimony, together with the testimony of the State Toxicologist as to the accuracy and proper calibration of the particular Breathalyzer both before the time such test was given and shortly thereafter, was sufficient to render the result obtained by the use of such Breathalyzer admissible in evidence.

■ The defendant next contends that the Breathalyzer was not approved by statute or by the National Safety Council and the American Medical Association, as required by Section 39–20–07(5), North Dakota Century Code, and that therefore admitting evidence of the result of such test was prejudicial error.

The statute to which the defendant refers is Section 39–20–07(5), North Dakota Century Code, as amended by Section 3 of Chapter 269 of the 1961 Session Laws. The above was the provision which was in force at the time of the defendant's arrest. That amendment provided:

> "5. The results of a test given by means of the Harger drunkometer or other similar device approved by the American Medical Association and the National Safety Council 'shall be received in evidence when it is shown that the test was fairly administered."

The record, as heretofore pointed out, clearly discloses that the test was fairly administered. But it is true that it was not approved by the American Medical Association, as contended by the defendant. The record shows that the Breathalyzer is approved by the National Safety Council. In a communication dated December 8, 1959, to Captain Edwin Anderson of the Fargo Police Department, Donald C. Lhotka, secretary of the Committee on Alcohol and Drugs, says:

> "The National Safety Council, through its Committee on Alcohol and Drugs, formerly known as a Committee on Tests for Intoxication, does endorse the breath method of testing for blood alcohol concentrations. It is our opinion that tests made on the Alcometer, Breathalyzer, Drunkometer, and the Intoximeter, if conducted in the manner prescribed by the authors of these methods will give comparable and reliable results for estimating the concentration of alcohol in the blood."

The American Medical Association, however, did not make an out-and-out endorsement of the Breathalyzer. In a communication dated December 18, 1959, from George E. Hall, executive secretary of the American Medical Association, to Captain Anderson, he says:

> "The American Medical Association does not, as a matter of policy, endorse or approve any specific product or device. In the opinion of the undersigned, Executive Secretary of AMA Committee on Medicolegal Problems, however, the individual members of that Committee would subscribe to the statement made in Mr. Lhotka's letter to you of December 8, 1959."

Thus it is true, as contended by the defendant, that the American Medical Association had not given an out-and-out approval of the Breathalyzer. But it was not because the American Medical Association felt that the Breathalyzer was unreliable. It was merely because the American Medical Association, as a matter of policy, does not feel that it should endorse or approve any specific product or device. When this fact was brought to the attention of a subsequent Legislature, Section 39–20–07(5), North Dakota Century Code, was again amended by Section 1 of Chapter 281, Session Laws of 1965, to read as follows:

> "5. The results of such chemical analysis shall be received in evidence when it is shown that the test was fairly administered, provided that a test of a person's blood, urine, breath or other bodily substance and the result thereof is further shown to have been performed according to methods and/or with devices approved by the state toxicologist and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory techniques, devices and methods of chemical analysis, and to determine and certify the qualifications of individuals to conduct such analysis."

Thus it is clear that when the 1961 law was enacted, the Legislature was unaware

of the fact that the American Medical Association did not endorse or approve specific products or devices. What the Legislature really was interested in, in providing for such approval, was to assure as many safeguards as possible against the use of any device which might result in a conviction of an innocent person. One cannot read the record in this case and have the slightest doubt that the defendant's rights were in any way violated. One of the maxims of jurisprudence found in our Code is that any interpretation of our laws must be reasonable. Sec. 31–11–05(33), N.D.C.C. This court has held that, "It is presumed that the Legislature, in enacting a statute, did not intend absurd or unjust consequences, or great public inconvenience." Village of North Fargo v. Fargo, 49 N.D. 597, 192 N.W. 977. It would be absolutely unreasonable for the Legislature to approve the use of the breath-testing devices for determining the alcoholic content of a person's blood, and at the same time require approval by an association when that absolutely could not be obtained.

The interpretation to be given to Section 39–20–07(5), as it was amended by Section 3 of Chapter 269, 1961 Session Laws, is that, before any device can be used for testing the amount of alcohol in a person's blood, at the time of a definite act, it must be shown that the device is one similar to the Harger Drunkometer, and that the test was fairly administered. That fact was amply shown by the record in the case before us. While the American Medical Association will not, as an association, approve any particular breath-testing devices, the individual members of the Committee on Medicolegal Problems will approve the use of such devices. The rights of the defendant were not in any way prejudiced by the use of the test given on the Breathalyzer. This is especially true where the evidence in the case was not only the result of such test given on the Breathalyzer but, in addition to such evidence, there was the testimony of the arresting officer that the defendant swayed and staggered, that he did not walk normally, that he admitted that he had been drinking, that his eyes were bloodshot and his pupils dilated, and that his face was flushed; and that, from his appearance, the arresting officer, who had had much experience with this type of person, felt that the defendant was intoxicated. To reverse the conviction of the defendant on such technical grounds as those urged by the defendant would be a grave miscarriage of justice and would make the enforcement of our laws against the operation of a motor vehicle while under the influence of intoxicating liquor a mere sham. The evidence against the defendant is not only sufficient —it is overwhelming—and supports the charge of operating a motor vehicle while under the influence of intoxicating liquor, for which the defendant was tried.

The final ground urged by the defendant for reversal of the judgment of conviction is that the use of the Breathalyzer was a violation of his constitutional right not to be made to testify against himself, and that the use of the Breathalyzer violated the Fifth Amendment of the United States Constitution, which provides that no person shall be compelled, in any criminal case, to be a witness against himself. Our North Dakota Constitution has a similar provision. Sec. 13, N.D. Constitution There is, of course, no merit to this contention of the defendant. In the first place, no constitutional question was urged by the defendant in the lower court. No defense can be urged by a defendant for the first time in this court on appeal. This is so elementary that no authority need be cited. However, we believe that we should answer this contention of the defendant, and so we point out that, in the first place, the defendant voluntarily consented to take the test. The 1966 decision of the United States Supreme Court in Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed. 2d 908, covered this identical question. The case we have under consideration here is

much stronger than the one before the United States Supreme Court in *Schmerber*. In that case, the test was given without the consent of the defendant. There the defendant, against his wishes, had blood drawn from his veins. The defendant in the instant case, however, consented to the taking of the Breathalyzer test.

The majority opinion in *Schmerber*, after stating the problem, says:

" * * * We therefore must now decide whether the withdrawal of the blood and admission in evidence of the analysis involved in this case violated petitioner's privilege. We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends."

Thus there is no merit to the defendant's objection that the use of the results of the test violated his constitutional rights against self-incrimination. The test showed that the defendant's blood registered fourteen hundredths of one per cent alcohol by weight, and our statute provides that any person having ten hundredths of one per cent or more by weight of alcohol in his blood is presumed to be under the influence of intoxicating liquor. That test, together with other evidence showing the defendant's actions, clearly indicated that the defendant was operating his motor vehicle while under the influence of intoxicating beverages and that the jury was right in returning a verdict of guilty.

For reasons stated herein, the judgment of the county court of Cass County is affirmed.

TEIGEN, C. J., and ERICKSTAD, MURRAY, and KNUDSON, JJ., concur.