**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Raymond SALHUS, Defendant and Appellant.**

**Crim. No. 467.**

Supreme Court of North Dakota.

June 26, 1974.

Rehearing Denied Aug. 26, 1974.

Thomas F. Kelsch, State's Atty. for Burleigh County, Bismarck, for plaintiff and appellee.

Lundberg & Nodland, Bismarck, for defendant and appellant.

VOGEL, Judge.

Defendant appeals from a conviction in the Burleigh County court of increased jurisdiction for driving a motor vehicle while under the influence of an intoxicating beverage.

The facts are as follows:

—At about 12:20 a. m. on April 27, 1973, defendant's pickup truck was stopped by Officer Schultz of the North Dakota Highway Patrol because the truck had no functioning tail lights.

—When the defendant got out of his truck to look at the tail lights he staggered and put his hand on the side of the truck. When the officer asked the defendant for his driver's license, defendant went through his billfold but went past his driver's license twice before the officer assisted him by pointing out the driver's license.

—The officer then informed the defendant that he was aware that the defendant had been drinking, and asked the defendant if he would perform a few tests. Defendant agreed and performed certain items of a field sobriety test, the results of which are not indicated in the record.

—The officer then placed defendant under arrest for driving while under the influence of intoxicating liquor. Officer Herbert Elter arrived at the scene shortly thereafter and took the defendant to the Bismarck police station where Elter proceeded to perform a breath-alcohol test on defendant, using a Breathalyzer testing device.

Defendant presents three issues on appeal:

1. Was there probable cause to arrest?

2. Can a conviction for driving while under the influence of intoxicating liquor be upheld where there is no evidence of driving impairment?

3. Was there foundation for the admission of any blood-alcohol test and of opinion evidence?

We shall first take up the issue as to probable cause for arrest.

N.D.C.C. 29–06–15 provides, in pertinent part:

"A peace officer, without a warrant, may arrest a person:

.   .   .   .   .   .

6. On a charge, made upon reasonable cause, of driving . . . a vehicle while under the influence of alcoholic beverages."

■ The term "reasonable cause," used in N.D.C.C. 29–06–15, is synonymous with the term "probable cause." See, e. g., Smestad v. Ellingson, 191 N.W.2d 799 (N.D.1971) [terms used interchangeably]. See also Fisher, Laws of Arrest (1967), at p. 150.

In Smestad v. Ellingson, *supra*, we found probable cause for an arrest for driving while under the influence of intoxicating liquor when the testimony of the arresting officer who arrived at the scene of an accident was that the "petitioner's speech was slurred, that he walked in an unsteady manner, that he had difficulty in responding to the officer's questions, that his eyes were glazed and bloodshot and that he had a strong odor of alcohol about him."

■ The State seems to contend that probable cause for arrest may be established by showing what happened after the time of the arrest. This argument is untenable.

In State v. Chaussee, 138 N.W.2d 788, 792 (1965), we quoted the Supreme Court of the United States as follows:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

". . . Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which

they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 39 A.L.R. 790.

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." [Quoted from Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310, 1311, 93 L.Ed. 1879 (1949).]

In the instant case, the arresting officer had observed that the defendant—

1. Failed to stop when the arresting officer was following him with his red light blinking;

2. Staggered when he got out of the truck;

3. Steadied himself by putting his hand on the truck after he got out; and

4. Had difficulty finding his driver's license.

■ We hold that these facts taken together constitute probable cause for arrest on a charge of driving while under the influence of intoxicating liquor since these " 'facts and circumstances . . . [are] sufficient in themselves to warrant a man

of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, *supra*.

■ The defendant's second argument is that a conviction for driving while under the influence of intoxicating liquor cannot be upheld where there is no evidence of driving impairment. He relies on State v. Hanson, 73 N.W.2d 135 (N.D.1955), in support of that proposition.

In that case, which also involved a defendant charged with driving while under the influence of intoxicating liquor, we approved the following jury instruction:

"On the question of intoxication, . . . a person is intoxicated or under the influence of intoxicating liquor when his mental and physical functions have become abnormal to some slight or great extent from the use of intoxicating liquor. It is immaterial whether the amount of liquor consumed was large or small.

"It depends upon how it affects his mental processes and bodily functions." 73 N.W.2d 135, at 139.

Defendant argues that it is the effect and not the amount of intoxicating liquor consumed that determines whether a person is "under the influence" to a degree affecting his ability to operate a motor vehicle, within the meaning of the statute. He seems to put forth the proposition that since the sole testimony shows that he was driving in a normal manner, the prosecution is unable to show that he was "under the influence" of intoxicating liquor. Defendant apparently has overlooked our definition of the phrase "under the influence of intoxicating liquor" as set forth in State v. Hanson, *supra*:

"The expression 'under the influence of intoxicating liquor' simply means having drunk enough to disturb the action of the physical or mental faculties so that they are no longer in their natural or normal condition; that therefore, when a person is so affected by intoxicating liquor as not to possess that clearness of

intellect and control of himself that he would otherwise have, he is 'under the influence of intoxicating liquor' and this is the common and well-known understanding of the expression." 73 N.W.2d 135, at 139, 140.

The same definition was applied in State v. Glavkee, 138 N.W.2d 663 (N.D.1965), and a similar one was given in State v. Neset, 216 N.W.2d 285 (N.D.1974).

■■ Defendant misapprehends the nature of the charge against him, since he argues that there must be objective and direct evidence that his driving ability was affected by an intake of intoxicating liquor. However, only two elements must be proved in order to sustain a conviction on such a charge:

1. That he was driving a motor vehicle on a public way; and

2. That while so driving a motor vehicle he was under the influence of intoxicating liquor so as "not to possess that clearness of intellect and control of himself that he would otherwise have."

■ The question to be answered, baldly stated, is not whether defendant was able to drive safely, but whether he was "under the influence of intoxicating liquor" while driving, as defined in State v. Hanson, *supra*. Impairment of driving ability need not be proved if the two elements above stated are proved.

Defendant urges as a third ground for reversal that there was insufficient foundation for the admission of a blood-alcohol test and of opinion evidence.

N.D.C.C. 39–20–07 provides that "evidence of the amount of alcohol in [a] person's blood . . . as shown by a chemical analysis of his . . . breath . . . is admissible" and that:

.    .    .    .    .    .

"5. The results of such chemical analysis shall be received in evidence when it is shown that the test was fairly administered, provided that a test of a person's . . . breath . . . and the result thereof is

further shown to have been performed according to methods and/or with devices approved by the state toxicologist and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist, . . ."

Defendant urges that the foundational requirements of approval of the State Toxicologist have not been met for the reason that the State Toxicologist is an officer of the State whose authority to issue rules and regulations is limited by N.D.C.C. Sections 28–32–01 and 28–32–02, of the Administrative Agencies Practice Act.

Section 28–32–01 provides that an "administrative agency" includes any officer "having state-wide jurisdiction and authority to make any order, finding, determination, award, or assessment which has the force and effect of law and which by statute is subject to review in the courts of this state."

N.D.C.C. 28–32–02 provides that proposed rules and regulations of administrative agencies must be submitted to the Attorney General for his opinion as to their legality, prior to adoption.

In First American Bank & Trust Co. v. Ellwein, 198 N.W.2d 84, 93 (N.D.1972), we held that the State Examiner was not an "officer," as defined in the Administrative Agencies Practice Act, for the reasons:

"(1) That he has no statewide regulatory powers to make or enforce any rules or regulations;

"(2) That he has no power to file complaints and to conduct hearings upon reasonable notice or to make specific findings of fact and to render decisions thereon:

"(3) That he has no power to issue any orders for the enforcement thereof, . . . ;

"(4) That there is no provision in our statutes declaring that his orders shall be final; and

"(5) That his findings . . . are not, by express statute, subject to judicial review."

■ The above reasons are equally applicable here and we hold that the State Toxicologist is not subject to the provisions of the Administrative Agencies Practice Act.

In the instant case, a certificate qualifying Officer Elter to administer Breathalyzer tests was admitted into evidence over objection. This certificate, which was signed by the Acting State Toxicologist, also certifies that the Breathalyzer is a device certified by him to meet "the requirements of Section 39–20–07 of NDCC, for the analysis of breath to determine blood alcohol concentration, . . ."

■ The certificate was objected to at the trial level as hearsay and at the appellate level for lack of foundation. The certificate was not admissible, although it could readily have been made admissible by compliance with Rule 44(a)(1), North Dakota Rules of Civil Procedure, setting forth the requirements for authentication of records and copies of records.

Section 39–20–07 provides another prerequisite as to admissibility of chemical tests, and that is a showing "that the test was fairly administered." In State v. Johnson, 42 N.J. 146, 199 A.2d 809, 823 (1964), the New Jersey Supreme Court said, in regard to Breathalyzer tests:

"It is, of course, most essential, in view of the heavy impact the result can have, that proper administration of the test be clearly established before the reading is admitted in evidence. This includes full proof that the equipment was in proper order, the operator qualified and the test given correctly . . ."

■ We think that this is the essence of what is meant by a "showing that the test was fairly administered" and that such a showing is required to establish foundation for admissibility.

In the instant case, Officer Elter testified as to the procedure he used to test the appellant. In addition, the procedural checklist he used was admitted into evidence. It is entitled "BREATHALYZER

OPERATIONAL CHECK LIST/State Toxicology Laboratory/Form 106 (1 July 1971)."

The following colloquy occurred on direct examination of Officer Elter:

"Q. After this test [of the appellant's breath], . . . were any other tests conducted with that machine?

"A. A vial test was done, yes.

"Q. Would you describe the manner in which that was done?

"A. This was done by again cleaning the machine with room air. A new card was inserted. Again the test—we stamped it at the zero point, I then blew in a known solution of alcohol and water—

"MR. NODLAND: Your Honor, I am going to object to that. I'd like to object—add an objection to relevancy at this point in his statement that he injected a known solution. That's a conclusion.

"THE COURT: Well, it's also vague. At least as far as this record goes. Could you amplify on that?

"THE WITNESS: Well, we have a standard solution of ten hundredths of one percent of water and alcohol mixture which is changed every thirty days and—

"MR. NODLAND: I'd object to that testimony and ask that it be stricken on the grounds there is no showing that it is in fact what the witness testified that he says it is.

"THE COURT: How do you—how do you know it's a standard solution?

"THE WITNESS: Well, the solution is mixed and tested. After it's tested, it is issued out to the field—

"MR. NODLAND: I'd add a further objection, Your Honor, on the grounds that it's hearsay at this point, and that there's no showing that this witness is competent to testify to the things that he just said."

The objections of the defendant were well taken and amply provided the prosecution with opportunities to correct the deficiencies in the foundation regarding the purported "known solution." However, no further testimony regarding the origin, spot-checking, or safeguarding of the "known solution" was elicited from the witness before the objections were overruled.

In State v. Miller, 146 N.W.2d 159, 163 (N.D.1966), we said:

"We believe that the fact that the sealed ampoules are received by the State from the manufacturer of the machine for use in the specific machine known as the Breathalyzer, and the further fact that such ampoules received in each shipment were spot-checked and were found to contain the proper chemicals, in the proper proportions, is sufficient prima-facie proof that the chemicals in any one ampoule are the proper kind, and that they are properly mixed. We believe that the State thus laid a sufficient foundation for the use of these chemicals in the Breathalyzer test given to the defendant. See State v. Baker, 56 Wash.2d 846, 355 P.2d 806."

In State v. Miller, supra, the foundational evidence was supplied by the State Toxicologist, an acknowledged expert, who had supervised the spot-checking of the ampoules. Here, the only evidence offered by the patrolman was hearsay.

We conclude that the foundational requirements for admissibility of the test with the "known solution" have not been met.

As to the importance of the test with the "known solution," Officer Elter testified further as follows:

"THE WITNESS: Your Honor, the purpose of the solution is to—you have a reading of ten hundredths percent. If you come within one hundredth of that result, either plus or minus, the machine is accurate, to my understanding,

"THE COURT: What Mr. Nodland has described, that's actually a checking process, but—

"THE WITNESS: This is a checking process to my estimation.

.    .    .    .    .    .

"MR. NODLAND: But the question is, if you put the solution in and the needle came up to six, what do you do?

"THE WITNESS: What do you do? You retest the subject.

"MR. NODLAND: You do not recalibrate the machine?

"THE WITNESS: You start a whole new test series.

"MR. NODLAND: What if, with that solution, the machine comes out to something other than within a tolerance area of ten?

"THE WITNESS: If you get two of them and they are that far off, then the tests are discontinued.

"THE COURT: Why? What did that indicate to you?
"THE WITNESS: The machine is malfunctioning."

This testimony, coupled with the total lack of foundation regarding the integrity of the "known solution," falls far short of the foundational requirement for admissibility of the chemical test of "full proof that the equipment was in proper order." State v. Johnson, *supra*.

■ We therefore hold that the results of the Breathalyzer test were improperly admitted into evidence over proper objection because of the lack of a full showing that "the test was fairly administered" as required by N.D.C.C. 39–20–07.

As was said in State v. Conners, 125 N. J.Super. 500, 311 A.2d 764, 767 (1973):

"Because the statute creates a presumption from the breathalyzer readings alone, it is imperative that the machine be in accurate working order."

At the close of all the testimony in this case, the trial judge stated:

"Well, I frankly do not understand what happened here, because the test would indicate that he was not only under the influence, but very much so. Point two two [0.22%], as we all know, is a high test; and yet, I did not get that impression from the arresting officer's testimony. There's no indication that the car was driving in an unusual manner. There was some indication about the license fumbling, but you hear that a lot, and it's perfectly consistent with innocence or nervousness. He did indicate that he administered some field tests, which the results or comments or observations of the officer were not elicited either.

"However, based upon the testimony of Officer Elter and his opinion and the results of this test, I don't think I can avoid the conclusion that the driver of this vehicle was under the influence of intoxicating liquor; and I therefore find accordingly."

■ Officer Elter's opinion that the defendant was under the influence of intoxicating liquor was based upon his observation that he smelled the aftereffect of alcohol on the defendant's breath and, apparently, upon other observations not made a part of the record. The officer's opinion, without facts to support it, is insufficient to sustain the conviction.

We hold that the erroneous admission of the results of the Breathalyzer test into evidence substantially prejudiced the rights of the defendant-appellant. The decision of the trial court is reversed.

ERICKSTAD, C. J., and TEIGEN, PAULSON and KNUDSON, JJ., concur.