**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Gary PUHR, Defendant and Appellant.**

**Cr. No. 798.**

Supreme Court of North Dakota.

Feb. 11, 1982.

---

Janet Holter Zander, Asst. State's Atty., Williston, for plaintiff and appellee.

Brian W. Nelson, Fargo, for defendant and appellant; argued by William Kirschner, Fargo.

ERICKSTAD, Chief Justice.

Gary Puhr appeals from a judgment of conviction entered in the Williams County Court With Increased Jurisdiction for the offense of driving a motor vehicle while under the influence of alcohol. Puhr asserts that the trial court erred by admitting the results of a breathalyzer test showing his blood alcohol content to be .20 percent by weight. For reasons hereafter stated, we affirm.

Gary Puhr was stopped and arrested by two Williams County Deputy Sheriffs and charged with the offense of driving a motor vehicle while under the influence of alcohol or drugs. The officers testified that they were on routine patrol west of Williston during the early morning hours of January 13, 1981. At approximately 1:20 a. m. they observed a white van exit the parking lot of the Club Missouri, turning eastwardly into the oncoming lane of traffic. The officers said the van swerved into the oncoming lane of traffic and that the driver applied the brakes, causing the brake lights to flicker off and on. The officers activated the red lights on their patrol car and the driver pulled the van over to the side of the road and stopped. The driver, Gary Puhr, was approached and asked to perform several roadside sobriety tests. The officers testified that he failed those tests. They also testified that they smelled a strong odor of alcohol on Mr. Puhr's breath. The officers placed Puhr under arrest. That arrest occurred between 1:20 a. m. and 1:25 a. m. Puhr was then taken to the Law Enforcement Center in Williston and given a breathalyzer test which was administered at 1:38 a. m.

On June 24, 1981, Puhr was found guilty in Williams County Court by a jury of six persons of the offense of driving a motor vehicle while under the influence of intoxicating liquor.

Puhr's sole contention on appeal is that the breathalyzer test was not "fairly administered" because it was not performed according to the method approved by the state toxicologist. The "Approved Method to Conduct Breath Test with Breathalyzer" to which Puhr directs this court was published by the state toxicologist on June 3, 1976, and placed on file with the clerks of the district courts of North Dakota. That method requires that the operator "must ascertain that the subject has had nothing to eat, drink or smoke within twenty minutes prior to the collection of the breath sample." Puhr contends that because he was only under arrest for a maximum of 18

minutes and perhaps only 13 minutes before the test was administered, the operator could not have ascertained that he ingested nothing within 20 minutes of the test. The state toxicologist, Dr. N. G. S. Rao, however, testified during the State's rebuttal that the test results are accurate if the defendant has had nothing to eat, drink or smoke within 10 to 12 minutes prior to the collection of the breath sample.

Section 39–20–07 of the North Dakota Century Code provides for the admissibility of chemical analysis of blood, breath, saliva or urine in a trial involving driving a motor vehicle while under the influence of intoxicating liquor. It provides in part:

"5. The results of such chemical analysis shall be received in evidence when it is shown that the test was fairly administered, provided that a test of a person's blood, urine, breath, or other bodily substance and the result thereof is further shown to have been performed according to methods or with devices approved by the state toxicologist, or both, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist.... Upon approval of the methods or devices, or both, and techniques required to perform such tests and the persons qualified to administer them, the state toxicologist shall prepare and file written record of such approval with the clerk of the district court in each county within the state which shall include:

\* \* \* \* \* \*

c. The operational check list and forms prescribing the methods and techniques currently approved by the state toxicologist in using such devices during the administration of the tests. Copies of the above records certified by the clerk of the district court shall be admitted as prima facie evidence of the matters stated therein." § 39–20–07(5), N.D.C.C.

■ We discussed the foundational requirements needed to show that a breathalyzer test was "fairly administered" in

*State v. Schneider*, 270 N.W.2d 787, 791 (N.D.1978). We said:

"The foundational requirements needed to show that a breathalyzer test was 'fairly administered' and that the results, therefore, are admissible may be met by testimony of the state toxicologist. In his absence, such proof may be made by the introduction of certified copies of records filed by the state toxicologist with the clerk of the district court relating to the approval of devices and methods, and the certification of test operators." (Citations omitted.) *Id.*

It is therefore the state toxicologist's approval which is critical. If he testifies at trial, that testimony takes precedence over the approved methods placed on file with the district courts.

In this case, the State offered a certified copy of the "Approved Method to Conduct a Breath Test with Breathalyzer" to satisfy the foundational requirement of proving that the test was "fairly administered". The State argued that all requirements of the "approved method" were met. The approved method, however, requires that, "[p]rior to performing the test, the operator must ascertain that the subject has had nothing to eat, drink or smoke within twenty minutes prior to the collection of the breath sample." Puhr objected to the offer of the test results by the State. He argued that he could not have been observed for 20 minutes prior to administration of the test because he had been arrested only 13 to 18 minutes prior to that administration. He therefore asserted that the 20-minute observation requirement had not been met. The court received the test results in evidence over Puhr's objection.

■ At that point in the proceedings, the test results were received without proper foundation. As Puhr was under observation for a maximum of 18 minutes, the 20-minute observation requirement was not met. That foundational defect, however, was later cured when the state toxicologist testified. At the close of the defendant's case, the toxicologist was called in rebuttal

by the State. He testified that the 20-minute requirement listed in the approved method was not an absolute requirement but rather a general guideline. He said that a test conducted on a breath sample taken 10 to 12 minutes after the subject had something to eat, drink or smoke would be valid. The error in the premature admission of the test results was harmless error which was cured by the testimony of the state toxicologist.

■ Any error which does not affect the substantial rights of a defendant is to be disregarded. Rule 52(a), N.D.R.Crim.P. In this case, the defendant's substantial rights were not affected by the trial court's error. Although the foundation was faulty at the time of the admission, it was later cured. The defendant did move for a directed verdict (the proper motion would have been a motion for judgment of acquittal[1]) at the end of the State's case and again at the end of his case. That motion, however, was properly denied even though the test results were, at that stage of the proceedings, improperly received into evidence as there was sufficient testimony in the record of Puhr's driving while intoxicated to raise a question of fact for the jury.

We said in State v. Salhus, 220 N.W.2d 852, 859 (N.D.1974) that:

"Officer Elter's opinion that the defendant was under the influence of intoxicating liquor was based upon his observation that he smelled the after-effect of alcohol on the defendant's breath and, apparently, upon other obervations not made a part of the record. The officer's opinion, without facts to support it, is insufficient to sustain the conviction."

In State v. Salhus, Id. at 855, the arresting officer observed that the defendant:

"1. Failed to stop when the arresting officer was following him with his red light blinking;

"2. Staggered when he got out of the truck;

"3. Steadied himself by putting his hand on the truck after he got out; and

"4. Had difficulty finding his driver's license."

The arresting officer in Salhus did perform "certain items of a field sobriety test"; however, the results were not made a part of the record. The instant case may be distinguished from Salhus as the arresting officers in this case both testified to the results of the field sobriety tests. Deputy Torgerson testified as follows:

"Q Did you detect that odor about Mr. Puhr at the time that his vehicle was stopped on January 13, 1981?

"A Yes.

"Q What was the character of his breath?

"A It had a strong smell of alcohol on his breath. You could smell it clearly.

"Q Did Mr. Puhr get out of the vehicle?

"A Yes.

"Q Would you describe that?

"A When he got out of the vehicle he stepped from the vehicle, and his general walking was that he was swaying from side to side.

"Q How was his coordination?

"A Other than walking it was a swaying motion back and forth walking back towards our patrol car.

\*　　\*　　\*　　\*　　\*　　\*

"Q Describe his speech?

"A His speech was good, but his words were slurred, but he was understandable.

"Q Did you ask him to perform any physical coordination or balance tests?

"A Yes I did.

"Q Would you describe those tests for the jury?

"A When I first approached Mr. Puhr I explained to him why we had stopped him, and I then explained to him what I wanted him to do. I first showed him

---

1. The defendant's appropriate motion would have been a motion for judgment of acquittal. See Rule 29, N.D.R.Crim.P. We need not address the issue of the effect of moving for directed verdict rather than a motion for judg- ment of acquittal, because of our determination that the evidence at the close of the State's case was not insufficient to justify a submission of the case to the jury.

each test that I wanted him to perform and then he performed them. The first one I had him do was a finger-to-nose test, and using his left hand Mr. Puhr used his index finger, rather he used his ring finger instead of his index finger and he would perform it and then he would switch to his right hand without me asking him to.

"Q Would you stand up and show the jury just exactly what the test consists of?

"A The first test we had, the defendant stand together with his feet together and we had him tilt his head back and his hands outstretched in this position.

(The witness then demonstrated the position to the jury.)

"We then had him close his eyes, lean his head back and we then instructed him to take his left index finger and touch the tip of his nose. Mr. Puhr used his right ring finger and then he would switch and use his other hand without me instructing him to.

"Q Were there any other roadside tests performed?

"A Yes.

"Q Could you describe those also?

"A The second test that I had him perform was a walking test, and a toe-over-heel test toward the patrol car and then turn around and walk back towards his vehicle.

"Q Would you show that test to the jury also?

"A It was just a matter of standing in one position and just walking toe-over-heel in such a fashion to the patrol car, turn around and walk back toward his vehicle. The third test that I had Mr. Puhr do, I had him stand together with his feet together and lift his left leg and just swing it back and forth.

(The witness demonstrated such test to the jury.)

"Q How did the defendant perform that test?

"A When he lifted his leg up he would loose his balance and he would fall towards his vehicle each time he tried it.

\* \* \* \* \* \*

"Q And would you state that opinion to the jury?

"A In my opinion Mr. Puhr was under the influence of alcohol.

"Q And what are you basing that opinion on?

"A I am basing this on the way that I observed him driving his vehicle, swaying back and forth and crossing the center line and back into his own lane of traffic. And watching him step from his vehicle swaying and then performing the roadside tests that I had asked him to do."

Deputy Keith testified as follows:

"Q What tests did you observe him perform.

"A Well as I recall he attempted to perform the test of touching his index finger to the tip of his nose. When he did that he used his ring finger, after being shown by Deputy Torgerson how to perform the test with the index finger, the defendant used his ring finger and touched considerably high as he was in the area of his bridge—the bridge of his nose.

"I also observed him walk the toe-to-heel test. Deputy Torgerson also showed the defendant how to walk toe-to-heel and the defendant did not walk in the manner that was shown to him. Instead the defendant did not place his heel to his toe, but just more or less walked in the regular fashion.

"Q Do these tests indicate to you Mr. Puhr's fitness to be a driver?

"A It indicated to me that the subject was not fit to be driving at the time."

A motion for judgment of acquittal will be granted only if the evidence is insufficient to sustain a conviction of the offense charged. Rule 29, N.D.R.Crim.P. Because of the extensive testimony of officers Torgerson and Keith, we believe the court properly denied Puhr's motion.

■ Additionally, Section 29–21–01, N.D. C.C., provides that after the defendant rests, the parties may offer rebutting testimony only, unless the court, for good rea-

son, in furtherance of justice, or to correct an evidence oversight, permits them to offer evidence upon their original case. We have said it is within the discretion of the court to allow the prosecution to give evidence in aid of the case already made after the defense has rested. *State v. Schneider*, 53 N.D. 931, 208 N.W. 566 (1926). No objections to the subject matter of the state toxicologist's testimony were made by the defense during the trial. Under the circumstances, we conclude that the trial court did not abuse its discretion in permitting the State to offer the testimony of the state toxicologist in rebuttal. As the state toxicologist's rebuttal testimony cured the defect in the foundation for the receipt of the test results, the earlier error in the premature receipt of the test results was harmless. Rule 52(a), N.D.R.Crim.P.

For the reasons stated herein, we affirm the judgment of conviction.

SAND, VANDE WALLE, PEDERSON and PAULSON, JJ., concur.