**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Dallas W. GUTHMILLER, Defendant and Appellant.**

**Crim. No. 969.**

Supreme Court of North Dakota.

June 28, 1984.

John E. Greenwood, Asst. State's Atty. (argued), and Charles J. Gilje, State's Atty., Jamestown, for plaintiff and appellee.

James A. Wright, of Hjellum, Weiss, Nerison, Jukkala, Wright, & Paulson, Jamestown, for defendant and appellant.

VANDE WALLE, Justice.

Dallas W. Guthmiller appeals from a judgment of conviction of the offense of driving while under the influence of intoxicating liquor.[1] We affirm.

On July 10, 1983, Guthmiller was arrested and administered a Breathalyzer test, which indicated that he had a blood alcohol concentration of .18 percent by weight. The officer conducting the Breathalyzer test began each of the tests involved on the wrong starting line, and 34 minutes elapsed between the room air test and the analysis of Guthmiller's breath. On July 19, 1983, a gear was changed in the Breathalyzer machine because it had been recording standard solution tests above the acceptable range.

Asserting that the Breathalyzer operator was not qualified, that the test was not administered according to methods approved by the State Toxicologist, and that the Breathalyzer machine used was not in good working order, Guthmiller contends that the Breathalyzer test was not fairly administered and that the trial court erred in admitting the result into evidence. He also contends that without the Breathalyzer test result the evidence is insufficient to sustain his conviction. We conclude that the Breathalyzer test was fairly adminis-

---

1. Section 39–08–01, N.D.C.C, provides:

   "1. A person may not drive any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

   "a. That person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving.
   "b. That person is under the influence of intoxicating liquor...."

tered and the result properly admitted into evidence. We therefore need not address the issue of the sufficiency of the other evidence to sustain Guthmiller's conviction.

Subsection 5 of Section 39–20–07, N.D. C.C., provides, in part:

"The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist...."

■■■ We said in *State v. Schneider*, 270 N.W.2d 787, 791 (N.D.1978):

"Fair administration of the breathalyzer test requires, at the minimum, a showing that the test was 'performed according to the methods and/or with devices approved by the state toxicologist and by an individual possessing a certificate of qualification to administer the test'. § 39–20–07(5), N.D.C.C.

"The foundational requirements needed to show that a breathalyzer test was 'fairly administered' and that the results, therefore, are admissible may be met by testimony of the state toxicologist. In his absence, such proof may be made by the introduction of certified copies of records filed by the state toxicologist with the clerk of the district court relating to the approval of devices and methods, and the certification of test operators. § 39–20–07(5), N.D.C.C." [Citations omitted.]

■ In *State v. Puhr*, 316 N.W.2d 75, 77 (N.D.1982), we held:

"It is therefore the state toxicologist's approval which is critical. If he testifies at trial, that testimony takes precedence over the approved methods placed on file with the district courts."

The Breathalyzer machine has a "zero line" and a "start line" at which the various tests involved in a Breathalyzer test

are to be started. The officer who administered the Breathalyzer test to Guthmiller began the tests involved on the wrong starting lines. Dr. N.G.S. Rao, State Toxicologist, testified that the difference between the two lines is .003 percent and is to compensate for indigenous alcohol present in some individuals.

Although the instant Breathalyzer test was made prior to the July 19, 1984, repair to the machine, Dr. Rao testified that the room air test and standard solution test involved tested out properly and that "if there is any difference it is not significant." He testified that if the standard test and the room air test are right on a given date, the machine is running properly. As to the 34-minute time lapse between the room air test and analysis of Guthmiller's breath, Rao testified that it had no significant effect.

■ Thus as to each individual variance from the approved methods to conduct Breathalyzer tests filed with the district courts pursuant to Section 39–20–07, N.D. C.C., Dr. Rao testified that there was an insignificant difference in result. Rao further testified that he had considered "each of the things that have gone wrong in giving this test" and that "instead of the figure that is given here, it could be less by .01 percent in it." Reduction of Guthmiller's Breathalyzer test result by .01 percent would result in a blood alcohol concentration of .17 percent by weight.

Dr. Rao's testimony at trial takes precedence over the approved methods placed on file with the district courts. *State v. Puhr*, 316 N.W.2d 75 (N.D.1982). The fact that the officer administering the Breathalyzer test made mistakes which might have precluded admissibility of the Breathalyzer test result was overcome by Dr. Rao's testimony that each of the individual mistakes had an insignificant effect on the result and by his testimony that, considering each of the things that went wrong, the indicated result "could be less by .01 percent."

■ We do not agree with Guthmiller's contention that "[t]he errors made by the

Breathalyzer operator show that he was not qualified to give the Breathalyzer test." It is undisputed that the officer was certified by the State Toxicologist as a qualified operator. We said in *State v. Entze*, 272 N.W.2d 292, 295 (N.D.1978):

"We believe that the receipt in evidence of a certified copy of the operator's certificate and the certified copy of the list of certified chemical test operators, creates a prima facie case of the operator's proficiency, but that it does not create an irrebuttable presumption of the operator's proficiency, and that, accordingly, defense counsel should have been permitted to engage in a reasonable amount of cross-examination into the qualifications of the operator...."

Guthmiller was not denied the opportunity to cross-examine into the operator's qualifications. While the operator's imprecision in performing the Breathalyzer test in this instance does not present a model for emulation, the fact that he made mistakes which Dr. Rao testified had an insignificant effect on the result is insufficient to overcome the "prima facie case of the operator's proficiency" so as to render the Breathalyzer test result inadmissible.

For the foregoing reasons, we conclude that Guthmiller's Breathalyzer test was fairly administered and the result of the test was properly received into evidence. The judgment is therefore affirmed.

ERICKSTAD, C.J., and PEDERSON, GIERKE and SAND, JJ., concur.