Alvin G. WITTE, Appellant,

v.

Walter R. HJELLE, State Highway Commissioner, Appellee.

Civ. No. 9115.

Supreme Court of North Dakota.

Oct. 6, 1975.

**18**

Frederick D. Kraemer, Fargo, for appellant.

Norbert H. Lange, Sp. Asst. Atty. Gen., State Highway Dept., Bismarck, for appellee.

PAULSON, Judge.

This is an appeal from the order of the Cass County District Court affirming an administrative order of the State Highway Commissioner, Walter Hjelle, by his agent [hereinafter sometimes referred to as "commissioner"], revoking the driver's license of petitioner-appellant Alvin G. Witte, for Witte's refusal to submit, under the Implied Consent Law, Chapter 39–20, N.D.C.C., to a chemical test for the determination of the alcohol content of his blood.

In the early morning hours of October 22, 1974, Witte was seen driving his car in an erratic manner eastbound on U. S. Highway 10 between Fargo and West Fargo. He was observed by Officer Ronnie Dick of the North Dakota Highway Patrol, who began following the Witte vehicle. After observing such vehicle cross over the centerline of the highway once and then drift onto the right shoulder of the road several times, Officer Dick turned on the red signal lights of the patrol car. However, Witte failed to stop on the officer's signal and continued to drive another half-mile upon Highway 10 before both vehicles stopped for a traffic signal at the junction of Main Avenue and Interstate 29. While Officer Dick was outside of his patrol car walking towards Witte's vehicle, the traffic signal changed from red to green and Witte drove off. Officer Dick again followed the Witte vehicle, pulling alongside of it and attracting Witte's attention by flashing a spotlight through the window on Witte's side of his car. Witte then stopped his car. Officer Dick also stopped his patrol car and approached the Witte vehicle.

After asking Witte for his driver's license and on being told by Witte that he did not have it with him, Officer Dick asked Witte to get out of the car. As Witte did so, the officer noticed that Witte's eyes were bloodshot and that there was a moderate odor of alcohol on Witte's breath. Officer Dick then asked Witte if he had been drinking and received an affirmative response. During the administration by Officer Dick of a balancing test to Witte at the scene, Witte swayed in a jerky manner.

Officer Dick then arrested Witte without a warrant for driving while under the influence of intoxicating liquor and requested that Witte submit to a blood test under the Implied Consent Law, § 39–20–01, N.D.C.C., to ascertain the alcohol content of his blood. Witte refused to take such test and, when he was given another opportunity to submit to the blood test after his transfer to the

Cass County Jail, Witte again refused to take the blood test.

The next day Officer Dick submitted the affidavit required by § 39–20–04, N.D.C.C. (showing that Witte refused to take a blood test for the alcohol content of his blood), to the state highway commissioner, who thereupon revoked Witte's driver's license for a period of six months. After a written request, pursuant to § 39–20–05, N.D.C.C., an administrative hearing was held on December 27, 1974, before the hearing examiner, Mr. Breen Kennelly, as designee for State Highway Commissioner Walter R. Hjelle. After the hearing, Mr. Kennelly entered findings of fact and conclusions of law based upon the testimony adduced at the hearing, and issued an order sustaining the revocation of Witte's driver's license.

From such order, Witte appealed to the Cass County District Court, pursuant to § 39–20–06, N.D.C.C., which provides for judicial review of the commissioner's decision based upon the record adduced at the administrative hearing. On March 11, 1975, the district court issued its opinion sustaining the action of the commissioner, and the district court's order was entered accordingly on March 13, 1975. It is from such order that this appeal is taken.

■ In reviewing the decision of the commissioner to order revocation of a driver's license under § 39–20–04, N.D.C.C., the scope of review of the administrative hearing covers three issues:

  1. Whether the law enforcement officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor;

  2. Whether the person was placed under arrest;

  3. Whether he refused to submit to the test or tests.

*Borman v. Tschida,* 171 N.W.2d 757, 759 (N.D.1969).

The only issue before the Court on this appeal, however, is whether Officer Dick had reasonable grounds to believe that Witte had been driving or was in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor. It is undisputed that Witte was, in fact, placed under arrest and did, subsequent to the arrest, refuse to submit to the proffered chemical testing for the alcohol content of his blood.

■ It is well settled in this State that this Court's review of an administrative decision as to the fact-questions presented at a hearing is limited. *Borman v. Tschida, supra* 171 N.W.2d at 759. *Geo. E. Haggart, Inc. v. North Dakota Work. Comp. Bur.,* 171 N.W.2d 104 (N.D.1969). Consequently, the commissioner's decision in this case will not be disturbed if there is substantial evidence in the record to support his findings of fact. *Agnew v. Hjelle,* 216 N.W.2d 291, 294 (N.D. 1974); *Borman v. Tschida, supra* 171 N.W.2d at 759.

The issue, therefore, focuses on one question: Was there substantial evidence in the record to support the commissioner's conclusion that Officer Dick had reasonable grounds to believe that Witte had been driving or was in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor?

■ The terms "reasonable grounds", "probable cause", and "reasonable cause" are synonymous and are used interchangeably. *See, e. g., Smestad v. Ellingson,* 191 N.W.2d 799 (N.D.1971); *State v. Salhus,* 220 N.W.2d 852, 855 (N.D.1974). See also *Thorp v. Department of Motor Vehicles,* 480 P.2d 716, 719 (Or.App.1971) ("reasonable grounds" same as "probable cause" to arrest without a warrant).

In *State v. Chaussee,* 138 N.W.2d 788, 792 (N.D.1965), this Court discussed the standard for determining probable cause, quoting with approval from *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949), wherein

the Supreme Court of the United States stated:

" 'In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.' "

■ In applying such standard, probable cause exists where, as stated in *State v. Salhus, supra* 220 N.W.2d at 855, in quoting from *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, 1891 (1949);

" '. . . "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 39 A.L.R. 790.' "

Mr. Witte contends that in applying these tests in the instant case probable cause was not established because the observations of the officer in this case were not the same observations as those set forth in two earlier cases—*i. e., State v. Salhus, supra,* and *Smestad v. Ellingson, supra.* More specifically, Mr. Witte asserts that probable cause does not exist unless it is first determined that the arresting officer observed the following conditions: slurred speech, an unsteady walk coupled with difficulty in balancing without support, difficulty in responding to questions, glazed and bloodshot eyes, and the presence of a strong odor of alcohol. These conditions were the ones present in the *Salhus* and *Smestad* cases. Such contention of Mr. Witte, however, misapprehends the application of the above standards.

■ It is fundamental in making a determination of probable cause that each case must turn on the particular facts and circumstances apparent to the officer involved at the time of the arrest. *Brinegar, supra* 338 U.S. at 176, 69 S.Ct. 1302. The facts and circumstances of cases such as *Salhus* and *Smestad* are, in themselves, only illustrative of the types of factual situations which may constitute probable cause under similar circumstances and they are not necessarily determinative of the issue in a subsequent case.

The Oregon case of *Thorp v. Department of Motor Vehicles, supra,* is very similar to the instant case. In *Thorp,* the police officer stopped an automobile after observing it being driven over the centerline of the roadway. After stopping the vehicle, the officer observed that Thorp had bloodshot eyes, his clothes were dirty and disarranged; he was unsteady on his feet, his speech was slurred, and his breath smelled of alcohol.

In *Thorp,* in reversing the decision of the trial court which had found that the officer did not have probable cause to arrest Thorp, the Oregon Court of Appeals said, in 480 P.2d at 719:

"Probable cause or reasonable grounds is a conclusion of law which arises by inference from the facts found. If the facts support the inference, probable cause exists. In the present case [the *Thorp* case] the following facts were testified to by both the plaintiff and the police officer:

"(1) Bloodshot eyes;

"(2) Dirty and disheveled appearance;

"(3) Odor of alcohol."

In addition, the Oregon Appeals Court noted the existence of Thorp's slurred speech and the fact that the vehicle was seen being driven across the centerline of the roadway. From those facts, the Oregon Court concluded that the officer had reasonable grounds, or probable cause, to arrest Thorp for driving while under the influence of intoxicating liquor.

■ In the instant case, Officer Dick testified at the administrative hearing that:

1. The Witte vehicle crossed the centerline of the highway and was being driven in an erratic manner in Witte's lane of traffic;

2. Witte did not stop his vehicle until Officer Dick had put on the police car's red signal lights and had followed Witte for a considerable distance;

3. He noticed a moderate odor of alcohol on Witte's breath;

4. Witte's eyes were bloodshot;

5. Witte admitted that he had been drinking; and

6. Witte swayed and jerked during a balance test.

In this case, the findings of fact of the commissioner [1] are clear and substantially supported by the evidence.

At the administrative hearing, Witte testified that, for the three or four weeks immediately preceding his arrest in this case, he had been working on his beet harvest for about 17 hours each day; that he was tired at the time of the arrest; that he did not see the red lights from Officer Dick's car behind him because of the position of his own car's rearview mirror; that he had trouble walking and steadying himself because he had cataracts and wore thick eyeglasses; and that he had consumed two bottles of beer that evening, after working almost 17 hours in the beet fields that day. Witte did not contend, however, that Officer Dick had not observed that Witte had driven his vehicle in an erratic manner and had failed to stop when signaled to do so. Nor did Witte argue that Officer Dick had not observed that Witte had bloodshot eyes, had difficulty in steadying or balancing himself, and that his breath smelled of alcohol. Instead, Witte's evidence was offered merely to explain that the conditions observed by Officer Dick were caused by something other than the consumption of alcoholic beverages.

The Oregon Appeals Court, in *Thorp, supra* 480 P.2d at 720–721, correctly concluded that such evidence was irrelevant to a determination of the existence of probable cause to arrest a driver, when that court stated:

"The plaintiff, in providing plausible reasons for most of the conditions that the officer said he observed, himself provided proof of the officer's grounds for believing that plaintiff was under the influence of intoxicating liquor. The plaintiff admitted that the conditions existed and proceeded to explain them. The explanation of the causes of the conditions might rebut an inference that they arose from alcoholic consumption, but they affirmed the existence of the reasonable grounds for the officer's belief. A trier of fact, judge or jury, might have believed all these explanations, and found that the plaintiff was not under the influence of intoxicating liquor, but that is not the determination to be made here. Officers arresting for driving under the influence are often faced with citizens exhibiting physical characteristics which may arise from a variety of causes other than the

---

1. *"FINDINGS OF FACT*

*"Officer Dick noticed Mr. Witte swerve in traffic going eastbound as he was driving westbound. He turned around and was in back of him as he saw his left tires go over the centerline once and his right tires slid off the driving lane several times. He turned on his red lights. Both cars came to a stop at a red traffic signal. Officer Dick stepped out of his patrol car and was going to approach Mr. Witte's vehicle when the light changed to green and Mr. Witte went on his way. Officer Dick, eventually, did get him to stop and he did get to talk to him.*

*"He asked for his driver's license, which he did not have with him at the time. Then he asked him to step back toward the patrol car. At this time, he smelled alcohol on his breath, he noticed his eyes were bloodshot and he asked if he had been drinking, Mr. Witte told him he had drank two drinks earlier that evening.*

\* \* \* \* \* \*

*"Officer Dick requested that a balance test be taken to observe his coordination. While the test was being performed, he swayed and made a kind of jerky motion. He asked him to get into the patrol car where he arrested him for driving while being under the influence of alcohol."*

influence of alcohol. Faced with the physical conditions here described, and detecting the odor of alcohol, an officer has reasonable grounds to. believe that the physical condition is a result of alcohol."

The facts are not dissimilar from those facts in *Smestad, Salhus,* or *Thorp, supra.* We agree with the Oregon Appeals Court in *Thorp, supra* 480 P.2d at 721, where such Court observed:

"It is reasonable to assume that the legislature enacted the Implied Consent Law because the possible resolution of this ambiguity is one of the values of the breathalyzer test. It provides a quick, impartial, scientific determination of whether a physical condition is directly related to the influence of alcohol on the subject's behavior."

We conclude that, based upon the findings of fact of the commissioner at the administrative hearing and by applying the "practical, nontechnical" rule of probable cause outlined in *Brinegar, supra,* the only reasonable conclusion is that Officer Dick, when he arrested Mr. Witte for driving while under the influence of alcohol, had reasonable grounds to believe that Witte had been driving upon the public highways while under the influence of alcohol.

The order of the district court affirming the order of the commissioner revoking Witte's driver's license for a period of six months is therefore affirmed.

ERICKSTAD, C. J., SAND and VOGEL, JJ., and CLIFFORD JANSONIUS, Supreme Court Commissioner, concur.

VERNON R. PEDERSON, Associate Justice, deeming himself disqualified did not sit in this case; CLIFFORD JANSONIUS, Supreme Court Commissioner, sitting in his place.