Darold A. ASBRIDGE, Plaintiff and Appellant,

v.

NORTH DAKOTA STATE HIGHWAY COMMISSIONER, Defendant and Appellee.

Civ. No. 9720.

Supreme Court of North Dakota.

April 30, 1980.

740

Baer & Asbridge, Bismarck, for plaintiff and appellant; argued by Richard B. Baer, Bismarck.

Robert E. Lane, Sp. Asst. Atty. Gen., Bismarck, for defendant and appellee.

ERICKSTAD, Chief Justice.

This is an appeal from a judgment of the District Court for Burleigh County which affirmed an administrative decision revoking the plaintiff's driver's license for six months for his refusal to submit to chemical testing. We affirm.

On January 28, 1978, at approximately 2:15 a. m., Officer Earl O'Connell of the Bismarck Police Department came upon a car parked at an angle on the side of a street in the City of Bismarck. The car's lights were on, the engine was running, and there was a man slumped down behind the steering wheel with his eyes closed. Officer O'Connell approached the car and rapped twice on the window before the man opened his eyes and rolled down the window. The officer asked the man behind the wheel for his driver's license, whereupon he learned that the individual's name was Darold A. Asbridge, the plaintiff in this appeal. O'Connell noticed that Asbridge's speech was slurred and he detected the odor of alcohol. When asked if he had been drinking, Asbridge told O'Connell he had.

Officer O'Connell then asked Asbridge to step out of the car and walk to the rear of the vehicle. O'Connell testified that when Asbridge stepped from the car, he stumbled and leaned against the car for support. O'Connell then had Asbridge get into the patrol car.

Inside the patrol car, Officer O'Connell asked Asbridge to submit to an on-site chemical screening test for the purpose of estimating the alcohol content of his blood.

This chemical screening test is commonly referred to as an "ALERT" test. Asbridge failed the screening test and O'Connell thereafter placed him under arrest.

While driving to the police station, Officer O'Connell asked Asbridge on two occasions if he would submit to the taking of a breathalyzer test to determine the alcoholic content of his blood. Asbridge refused to take the test on both occasions. When they arrived at the police station, O'Connell again asked Asbridge to submit to a breathalyzer test, but he refused and requested to talk to an attorney.

Asbridge was allowed to call an attorney who arrived at the police station around 2:45 a. m. Asbridge and the attorney had a ten-minute private conference after which Asbridge signed the citation promising to appear in court at a later date and the two men left the station.

Officer O'Connell then returned to his patrol duties. Shortly thereafter, at approximately 3:00 a. m., O'Connell received a call from the police dispatcher asking him to return to the station. O'Connell testified that he returned to the police station around 3:20 a. m. At the station, Asbridge asked if he could take the test "out of courtesy", but O'Connell refused to administer the test because Asbridge had left the police station.

Officer O'Connell thereafter filed an affidavit with the defendant, the North Dakota State Highway Commissioner [hereinafter referred to as the Commissioner], pursuant to the requirements of Section 39–20–04, N.D.C.C., concerning Asbridge's refusal to submit to a chemical test. On February 2, 1978, Asbridge was properly notified of the State Highway Department's intent to suspend or revoke his driver's license for a period of six months. Asbridge was also given notice of his opportunity for a hearing on the matter. Section 39–20–05, N.D. C.C.[1] He requested a hearing by a letter dated February 15, 1978.

1. For a discussion on the constitutionality of a suspension or revocation of a driver's license

without a prior hearing, see 54 N.D.L.Rev. 274 (1977).

An administrative hearing was held in Bismarck on March 15, 1978, and Mr. Breen Kennelly, the administrative hearing officer, determined that Asbridge's driver's license should be revoked for a period of six months "for refusing to submit to a chemical test while in police custody and after being placed under arrest for being in physical control of a motor vehicle upon the public highways." Findings of fact, conclusions of law, and the decision were rendered on April 24, 1978.

Pursuant to statute, the decision of the administrative hearing officer was appealed to the District Court for Burleigh County on May 8, 1978. On November 14, 1979, a hearing was held, and on November 17, 1979, the district court issued its findings of fact, conclusions of law, and order for judgment which affirmed the decision of the administrative hearing officer. Judgment was entered on November 23, 1979, and Asbridge has appealed to this court from that judgment.

We have held that "[t]he provisions of the Administrative Agencies Practices Act, Chapter 28–32, N.D.C.C., are applicable to orders of revocation issued by the Commissioner under Section 39–20–04, N.D.C.C." *Agnew v. Hjelle*, 216 N.W.2d 291, 294 (N.D. 1974). Section 28–32–21 of the North Dakota Century Code authorizes this court to review a judgment which affirms an order revoking a driver's license under the implied consent law. It reads:

"28–32–21. *Review in supreme court.* The judgment of the district court in an appeal from a decision of an administrative agency may be reviewed in the supreme court on appeal in the same manner as provided in section 28–32–19, except that the appeal to the supreme court must be taken within sixty days after the service of the notice of entry of judgment in the district court."

Section 28–32–19, N.D.C.C., further provides:

"28–32–19. *Scope of and procedure on appeal from determination of administrative agency.* The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. If additional testimony is taken by the administrative agency or if additional findings of fact, conclusions of law, or a new decision shall be filed pursuant to section 28–32–18, such evidence, findings, conclusions, and decision shall constitute a part of the record filed with the court. After such hearing, the court shall affirm the decision of the agency unless it shall find that any of the following are present:

1. The decision or determination is not in accordance with the law.
2. The decision is in violation of the constitutional rights of the appellant.
3. Provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions and decision of the agency are not supported by its findings of fact.

If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court."

Therefore, our scope of review is rather limited and involves a three-step process: (1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law? *American State Bank of Williston v. State Banking Bd.*, 289 N.W.2d 222 (N.D. 1980); *see Bank of Hamilton v. State Banking Bd.*, 236 N.W.2d 921 (N.D.1976). Upon reviewing the evidence, this court must look to the record compiled before the administrative agency rather than to the findings of the district court. *North Dakota Real*

*Estate Commission v. Allen*, 271 N.W.2d 593 (N.D.1978).

■ We recognize that in reviewing the findings of an administrative agency, we must exercise restraint. *Allstate Ins. Co. v. Knutson*, 278 N.W.2d 383 (N.D.1979). As we said in *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979):

"In construing the 'preponderance of the evidence' standard to permit us to apply the weight-of-the-evidence test to the factual findings of an administrative agency, we do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record."

In the instant case, the scope of the administrative hearing held pursuant to Section 39–20–05, N.D.C.C., covered three issues:

(1) "whether a law enforcement officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor;"

(2) "whether the person was placed under arrest;" and

(3) "whether he refused to submit to the test or tests." Section 39–20–05, N.D.C.C.

After hearing the evidence, the administrative hearing officer, representing the Commissioner, concluded that (1) Officer O'Connell did have the necessary reasonable grounds to believe that Asbridge was in actual physical control of a motor vehicle while under the influence of intoxicating liquor on a street or highway in North Dakota; (2) Officer O'Connell placed Asbridge under arrest; and (3) Asbridge refused to submit to a chemical test of his breath to determine the alcoholic content of his blood. On review, we must determine whether or not the Commissioner's findings are supported by a preponderance of the evidence.

## I.

■ We said in *Witte v. Hjelle*, 234 N.W.2d 16 (N.D.1975), that the term "reasonable grounds", as used in Section 39–20–04, N.D.C.C., is synonymous with the terms "probable cause" and "reasonable cause". Probable cause exists where:

" 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 39 A.L.R. 790." *State v. Salhus*, 220 N.W.2d 852, 855 (N.D.1974), quoting *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

Whether or not probable cause exists depends on the facts and circumstances of each case. *Witte v. Hjelle*, 234 N.W.2d at 20.

■ In the case at bar, Officer O'Connell testified at the administrative hearing that:

(1) On January 28, 1978, at approximately 2:15 a. m., he came upon a car parked at an angle on a street in Bismarck. The car's lights were on, the engine was running, and a man (later determined to be Asbridge) was slumped down behind the steering wheel with his eyes closed;

(2) He rapped twice on the window before Asbridge opened his eyes and rolled down the window;

(3) He noticed that Asbridge's speech was slurred and he detected the odor of alcohol;

(4) Asbridge admitted that he had been drinking;

(5) Asbridge stumbled and leaned against the car for support when he got out of the car to walk to the rear of the vehicle; and

(6) Asbridge failed an on-site chemical screening test. No other evidence was presented to refute Officer O'Connell's observations.

We believe that these facts and circumstances, taken together, clearly gave Officer O'Connell reasonable grounds to believe that Asbridge was in actual physical control of his vehicle upon the public highways while under the influence of intoxicating liquor.

■ Asbridge, however, argues that the officer did not have reasonable grounds to believe he was in actual physical control of a vehicle while under the influence until *after* the administration of an on-site chemical screening test ("ALERT" test). Asbridge further contends that the circumstances did not warrant the administration of such a test because he had not committed a moving violation, nor was he involved in a traffic accident as a driver. *See* Section 39–20–14, N.D.C.C. Therefore, he contends that the necessary reasonable grounds did not exist. We disagree.

Section 39–20–14, N.D.C.C., is the statutory authority for the administration of an on-site chemical screening test. This section provides:

"39–20–14. *Screening tests.* Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to submit to an onsite screening test or tests of his breath for the purpose of estimating the alcohol content of his blood upon the request of a law enforcement officer who has reason to believe that such person committed a moving traffic violation or was involved in a traffic accident as a driver, and in conjunction with the violation or the accident the officer has, through his observations, formulated an opinion that such person's body contains alcohol. . . . The results of such screening test shall be used only for determining whether or not a further test shall be given under the provisions of section 39–20–01. If such person refuses to submit to such screening test or tests, none shall be given, but such refusal shall be sufficient cause to revoke such person's license or permit to drive in the same manner as provided in section 39–20–04, and a hearing as provided in section 39–20–05 and a judicial review as provided in section 39–20–06 shall be available. No provisions of this section shall supersede any provisions of chapter 39–20, nor shall any provision of chapter 39–20 be construed to supersede this section except as provided herein."

■ Similar in purpose to the various field sobriety tests, the purpose of an on-site chemical screening test is to insure that sufficient probable cause exists to warrant an arrest. The arresting officer, in light of the information already available to him, bent over backwards to insure that he had sufficient probable cause to place Asbridge under arrest, and we fail to see how Asbridge was prejudiced by the administration of the test. Had he passed the screening test, he would have been spared the onerous burden and inconvenience of having to decide whether or not to submit to further chemical testing.

■ Notwithstanding the administration of an on-site chemical screening test, assuming for the sake of argument only that it was improper in this case, we believe the other evidence presented at the administrative hearing was more than sufficient to give the arresting officer reasonable grounds to believe Asbridge was in actual physical control of a motor vehicle upon a public highway while under the influence of intoxicating liquor.[2] If the administration of a screening test in this case, and the testimony related thereto as presented at the administrative hearing was error, it was certainly harmless error under Rule 61 of the North Dakota Rules of Civil Procedure. We believe the Commissioner's findings of fact and conclusions of law pertaining to the reasonable grounds issue are supported by a preponderance of the evidence.

2. The administrative hearing officer purposely played down the use of the on-site screening test in his findings of fact, and eliminated it as one of Officer O'Connell's grounds to make the arrest.

## II.

The second and primary issue to be resolved is whether or not the Commissioner's finding that Asbridge was placed under arrest is supported by a preponderance of the evidence.

Asbridge contends that in order to invoke the provisions of the implied consent law, Section 39–20–01, N.D.C.C., the initial arrest of a person must be lawful. He argues that in order for a lawful arrest to occur, the arresting officer must place the suspect under arrest and inform him that he "will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor." Section 39–20–01, N.D.C.C.[3] Asbridge asserts that because Officer O'Connell failed to use these precise words when making the arrest, the arrest was unlawful and improper. To support this contention, Asbridge relies entirely on statements made by Officer O'Connell in response to questions raised by the hearing officer at the administrative hearing.

The transcript of the proceedings at the administrative level reveals that Officer O'Connell twice mentioned the reason that Asbridge was placed under arrest, but neither instance discloses the precise words used by the officer when Asbridge was informed of the cause for his arrest.

During the early stages of the hearing, Officer O'Connell was asked by the administrative hearing officer to describe the events of the morning of January 28, 1978. In describing what took place after Asbridge had failed the onsite screening test, the officer testified that he then advised the subject that he "would be placing him [Asbridge] under arrest for physical con-

trol—the act of physical control." Later in the proceedings, the hearing officer again addressed the following question to Officer O'Connell and received the following response:

"*BREEN KENNELLY*: The arrest was for what exactly again now?

"*OFFICER O'CONNELL*: The arrest was for . . . I arrested the subject for physical control—under the D.W.I. physical control ordinance of the city, sir.

"*BREEN KENNELLY*: Okay. I have no other questions."

These two replies are the only testimony elicited at the hearing relative to the words used by Officer O'Connell when he placed Asbridge under arrest. The arresting officer was never cross-examined by Asbridge's attorney concerning the precise words used when the officer informed Asbridge of the charge. Instead, and in support of the contention that the arrest was unlawful, Asbridge relies entirely on the officer's responses to the hearing examiner's interrogation as set forth above.

We believe that the officer's testimony, wherein he said that the arrest was "for physical control—under the D.W.I. physical control ordinance of the city," is not truly representative of the actual words used by the officer at the time of the arrest. The officer was merely responding to questions raised by the hearing officer, and was never asked to recite the precise words he used when he placed Asbridge under arrest and informed him of the charge. If Asbridge's attorney desired to discover the exact words used by the arresting officer, he should have cross-examined him on that subject.

Relevant to the issue of the lawfulness of the arrest is the case of *State v. Iverson*, 187 N.W.2d 1 (N.D.1971), *cert. den.*, 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971).

---

3. 39–20–01. *Implied consent to determine alcoholic content of blood.* Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent subject to the provisions of this chapter to a chemical test, or tests, of his blood, breath, saliva, or urine for the purpose of determining the alcoholic content of his blood. The test or tests shall be administered at the direction of a law enforcement officer only after placing such person except persons mentioned in section 39–20–03 under arrest and informing him that he is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor. The arresting officer shall determine which of the aforesaid tests shall be used." § 39–20–01, N.D.C.C.

In *Iverson*, the defendant argued that his arrest was unlawful because it did not conform to the statutory requirement that he be informed of the cause of his arrest. We held that:

> "Notwithstanding that Iverson may not have been verbally informed of the cause of his arrest, we are satisfied that the circumstances of his arrest . . . provided him sufficient notice of the cause of his arrest so that the objective of the statute was accomplished." *State v. Iverson*, 187 N.W.2d at 22–23.

In a more recent decision, *State v. Arntz*, 286 N.W.2d 478, 481 (N.D.1979), we relied upon *State v. Iverson, supra,* and determined that the circumstances of an arrest provided a defendant with sufficient notice of the cause for his arrest.

 Even if we assume, for the sake of argument, that when the officer in this case placed Asbridge under arrest he merely informed him that the arrest was "for physical control—under the D.W.I. physical control ordinance of the city," the arrest was nevertheless proper and lawful. The circumstances of the arrest provided Asbridge with reasonable notice of the cause for the arrest. Furthermore, he could have questioned the officer as to the cause of his arrest if he were in doubt, which apparently he did not do. If the circumstances of an arrest can provide a criminal defendant with sufficient notice for the cause thereof in a double-murder case or in an armed robbery situation, such as existed in *State v. Iverson* and *State v. Arntz*, respectively, then the surrounding circumstances can certainly provide sufficient notice to one suspected of being in actual physical control of a motor vehicle while under the influence of intoxicating liquor. Asbridge does not deny that he was placed under arrest. He merely contends that he was not properly informed of the cause for his arrest.

The Supreme Court of South Dakota was faced with an analogous factual situation in *Kirby v. State, Dept. of Public Safety*, 262 N.W.2d 49 (S.D.1978), and their holding is persuasive in this case.

In *Kirby*, two police officers had observed a man slumped over and asleep behind the steering wheel of his vehicle which was parked on a city street. The parking lights were on and the engine was running. In the process of checking the motorist's license, one of the officers detected the odor of alcohol. After the motorist failed to perform satisfactorily on three field sobriety tests administered by the officer, he was placed under arrest and the arresting officer informed the suspect that, "I have arrested you for DWI, a violation of 32–23–1.-" The arrested person thereafter refused to submit to a breathalyzer test.

The driving while intoxicated (DWI) charge was later dismissed on the ground that the police officers had no probable cause to arrest the motorist on that charge. The reason was that the officers had not observed the motorist driving the vehicle while under the influence of an alcoholic beverage. The State, however, proceeded with the revocation proceedings, and the motorist's driver's license was later revoked for a period of one year.

The driver in *Kirby*, whose license was revoked, contended that because he was purportedly arrested for driving while intoxicated rather than for being in actual physical control of his vehicle while under the influence, he was not subject to the sanctions of South Dakota's implied consent law. The Supreme Court of South Dakota rejected this argument and said:

> "We do not agree. True, the arresting officer told respondent that 'I have arrested you for DWI, a violation of 32–23–1,' but we do not perceive that statement as limiting the officer's statutory authority to require respondent to submit to a chemical test. It is the fact that the officer had probable cause to make the arrest that is of significance, not the precise wording that he employed in informing respondent of the nature of the specific offense, so long as the offense for which the officer had probable cause to arrest was one covered within SDCL 32–23–1, for SDCL 32–23–10 speaks only in terms of a lawful arrest for a violation of

SDCL 32–23–1." *Kirby v. State Dept. of Public Safety*, 262 N.W.2d at 52.

 While we recognize that the language of South Dakota's implied consent law [4] speaks only in terms of a lawful arrest for a violation of SDCL 32–23–1,[5] whereas our statute, Section 39–20–01, N.D.C.C., speaks in terms of placing the person under arrest "and informing him that he is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor," we do not believe that the disparity in the statutory language is of significant import. The precise wording employed by the arresting officer when informing the motorist of the cause for the arrest is not the controlling factor. Rather, the crucial issue is whether or not the officer had probable cause to arrest, and did in fact arrest the motorist for an offense covered within the purview of the implied consent law.

Notwithstanding this, there are other grounds supportive of the Commissioner's finding and conclusion that Asbridge was placed under arrest, and that the arrest was lawful.

Section 39–20–04, N.D.C.C., provides in pertinent part as follows:

"If a person under arrest refuses to submit to chemical testing, none shall be given, but the commissioner, upon the receipt of a sworn report of the law enforcement officer, forwarded by the arresting officer within five days after the refusal, showing that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor, and that the person

had refused to submit to the test or tests, shall revoke his license or permit to drive and any nonresident operating privilege for a period of six months; . . . ."

On January 30, 1978, Officer O'Connell executed and filed the required sworn report with the Commissioner. Officer O'Connell stated in his affidavit to the Commissioner that he "did arrest such person [Asbridge] and informed (him) (her) that (he) (she) was or will be charged with the offense of driving or being in actual physical control of a vehicle on the public highway while under the influence of intoxicating liquor." Despite the contention of Asbridge's attorney, this affidavit was a part of the record at the administrative hearing. At the commencement of the hearing, the hearing officer said, "I'm going to enter the sworn affidavit into the record." The pertinent statement contained in the affidavit clearly shows that Officer O'Connell properly informed Asbridge of the cause for his arrest. If Asbridge believed that the affidavit was in error, then he or his attorney should have thoroughly questioned the officer concerning the actual words he used at the time of the arrest in order to attempt to refute the statement embodied in the affidavit. This was not done.

 Asbridge argues that statements made within the sworn report filed with the Commissioner pursuant to Section 39–20–04 are analogous to statements made in a criminal complaint, and cannot be taken as true on their face. This argument is without merit. The affidavit required to be filed with the Commissioner pursuant to Section 39–20–04 is a prerequisite to the revocation of a driver's license under that statute. If the motorist fails to request a hearing within ten days after being notified

---

4. SDCL 32–23–10 provides in part: "Any person who operates any vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, urine, breath, or other bodily substance for the purpose of determining the amount of alcohol in his blood, as provided in § 32–23–7, provided that such test is administered at the direction of a law enforcement officer having lawfully arrested such person for a violation of § 32–23–1."

5. SDCL 32–23–1 provides in part: "A person shall not drive or be in actual physical control of any vehicle while:

(2) Under the influence of an alcoholic beverage."

by the Commissioner of the intended revocation of his privilege to drive in the state, an order of revocation will be issued, based upon that affidavit. We believe that the statement contained in the affidavit pertaining to the arrest, and the words employed by the arresting officer when he informed Asbridge of the reason for his arrest, are strongly supportive of the Commissioner's finding and conclusion that Asbridge was placed under arrest, and that the arrest was lawful.

We are mindful of the fact that, pursuant to Section 39–20–05, N.D.C.C., the relevant issue before the hearing officer, and before this court on appeal, is whether or not the person (Asbridge) was placed under arrest. Nothing therein requires that the arresting officer specifically inform the highway user of the reason for the arrest.

 Notwithstanding what we have said here, we do encourage law enforcement officers to be as specific and precise as possible when informing a suspect of the reason for an arrest. From a practical standpoint, however, we cannot expect a police officer to recite the exact words of the statute when arresting a motorist for being in actual physical control of a motor vehicle upon a public highway while under the influence of intoxicating liquor. Such technical precision may be preferred, but can hardly be expected when the circumstances of the arrest clearly indicate the reason for the arrest.

 A lawful arrest is a condition precedent to the administration of a chemical test as enunciated in Section 39–20–01, N.D.C.C. *Smestad v. Ellingson*, 191 N.W.2d 799 (N.D.1971); *McDonald v. Ferguson*, 129 N.W.2d 348 (N.D.1964). We believe that the arrest in the instant case was lawful, and the Commissioner's finding and conclusion that Asbridge was placed under arrest under circumstances disclosing reasonable grounds for the arrest of a person for being in actual physical control of a motor vehicle upon a public highway while under the influence of intoxicating liquor is supported by a preponderance of the evidence.

### III.

 The third and final issue to be addressed is whether or not the Commissioner's finding that Asbridge refused to submit to a chemical test is supported by a preponderance of the evidence.

The record shows, and it is not disputed, that Asbridge refused to submit to a breathalyzer test after having been asked by Officer O'Connell to do so on three separate occasions. The record further reveals that Asbridge and his attorney left the police station sometime around 3:00 a. m., on January 28, 1978, and returned shortly thereafter. Upon returning to the station, Asbridge requested the breathalyzer test. Officer O'Connell, who had left the police station and returned to his patrol duties, was called back and arrived at the station around 3:20 a. m. Asbridge asked Officer O'Connell if he would administer the test "out of courtesy," but the officer refused to do so because Asbridge had been released and had left the police station. Asbridge contends that, under the circumstances, the refusal to administer the test was unwarranted.

In *Lund v. Hjelle*, 224 N.W.2d 552 (N.D. 1974), we addressed the issue of whether or not a first refusal by a person to submit to a chemical test, for the purpose of determining the alcoholic content of his blood under the implied consent law, may be remedied by a later consent to take the test within a reasonable time while under the continuous custody of the police. In *Lund*, Justice Knudson, speaking for a majority of this court, said:

"[W]here, as here, one who is arrested for driving while under the influence of intoxicating liquor first refuses to submit to a chemical test to determine the alcoholic content of his blood and later changes his mind and requests a chemical blood test, the subsequent consent to take the test cures the prior first refusal when the request to take the test is made within a reasonable time after the prior first refusal; when such a test administered upon the subsequent consent would still

be accurate; when testing equipment or facilities are still readily available; when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; *and when the individual requesting the test has been in police custody and under observation for the whole time since his arrest.*" 224 N.W.2d at 557. (Emphasis added.)

Asbridge stated in his brief that he met all of the requirements set forth in *Lund* "with one small exception," that being that he left the police station for a few minutes. He argues that his leaving the police station should not preclude him from subsequently submitting to the test, and that the officer's refusal to administer the test under the circumstances was unreasonable. We disagree.

We believe the criteria enunciated in *Lund,* concerning a later consent to a chemical test after an initial denial, must be strictly and rigidly adhered to. Allowing a person charged with driving or being in actual physical control of a motor vehicle while under the influence to vacillate between not taking and taking a chemical test already imposes a severe and somewhat unwarranted burden upon law enforcement officers. *See* dissenting opinion in *Lund v. Hjelle,* 224 N.W.2d at 557-60. We are unwilling to add to this administrative burden by extending and expanding the requirements so precisely articulated in *Lund.* The Commissioner's finding that Asbridge refused to submit to a chemical test is supported by a preponderance of the evidence.

 Proceedings under Chapter 39-20 of the North Dakota Century Code are civil in nature. The purpose of the implied consent law is to discourage individuals from driving an automobile while under the influence of intoxicants; to revoke the driving privileges of those persons who do drive while intoxicated; and to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication. To further this objective, the Implied Consent Act provides for civil administrative proceedings in appropriate instances. These proceedings are separate and distinct from the criminal proceedings which may ensue from the arrest of an offending motorist. A dismissal or acquittal of the related criminal charge is irrelevant to the disposition of the revocation proceedings. Section 29-06-15(6), N.D.C.C.; *Clairmont v. Hjelle,* 234 N.W.2d 13 (N.D.1975).

 The administrative hearing is designed to resolve the three issues set forth in Section 39-20-05, N.D.C.C. The hearing officer is not expected to conduct a criminal trial, for the license revocation proceeding is not criminal in nature. It is an exercise of the police power for the protection of the public. *State v. Brude,* 222 N.W.2d 296 (N.D.1974). We are aware of the importance of the driving privilege in our society today, but we also recognize that the privilege cannot be granted without limitations as to its continuation.

The Commissioner's findings of fact are supported by a preponderance of the evidence, and the conclusions of law are sustained by those findings. Further, the Commissioner's decision that the driver's license of Darold A. Asbridge should be revoked for a period of six months is supported by the conclusions of law.

The judgment of the district court which upheld the Commissioner's decision is affirmed.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.