Gary C. ZIETZ, Petitioner
and Appellee,

v.

Walter R. HJELLE, North Dakota
State Highway Commissioner,
Respondent and Appellant.

Civ. No. 11215.

Supreme Court of North Dakota.

Oct. 28, 1986.

Lundberg, Nodland, Lucas & Schulz, Bismarck, for petitioner and appellee; argued by Irvin B. Nodland.

Robert E. Lane, Asst. Atty. Gen., Bismarck, for respondent and appellant.

ERICKSTAD, Chief Justice.

The North Dakota Highway Commissioner appeals from a district court judgment reversing an administrative suspension of Gary C. Zietz's driver's license pursuant to Chapter 39–20, N.D.C.C. We reverse.

On September 13, 1985, at approximately 1:16 a.m., Zietz was driving a motor vehicle in Minot when he was involved in a pedestrian-automobile accident. Zietz stopped after the accident but when he was unable to locate the injured pedestrian he proceeded a short distance to his house and had his wife call the police at approximately 1:19 a.m. Meanwhile, the police had received a report from another source that an individual was seen lying on the highway. Officer Black brought Zietz back to the scene of the accident at approximately 1:35 a.m. where Officers Narum and Rosenquist questioned Zietz.

Officers Narum and Rosenquist testified at the administrative hearing that they detected the odor of alcohol on Zietz's breath and that his speech was slurred. Zietz admitted that he was driving the vehicle that struck the pedestrian and that he had had several drinks between 9 p.m. and 12:30 a.m. that evening but that he had not consumed any alcoholic beverages after

12:30 a.m. Zietz was requested to perform a field sobriety test, and Officer Narum described Zietz's performance on that test at the administrative hearing:

"OFFICER NARUM: ... On his walking test he was asked to walk forward, eight steps, turn around, and walk back five steps, heel to toe. In performing this test he did not walk completely right, with placing his heel against the toe. He kept them separate, approximately two inches. His walking was wobbly, and he had to step out of line once just before turning around. His turn was hesitant. He did perform the correct number of steps.

"On the balance test, where you hold one leg out in front of you, the first time he tried it he had to put his foot down right away. The second time he did it he was wobbly.

"The finger-to-nose test, with the right finger, the first knuckle of his index finger hit the tip of his nose. With his left finger, the tip of his finger hit his upper lip.

"I then asked him to recite the alphabet, which he tried to do twice. Both times he mixed up letters after the 'L.' That completed it."

The officers arrested Zietz for operating a motor vehicle in violation of Section 39–08–01, N.D.C.C.,[1] at approximately 1:45 a.m., and he was taken to a local hospital where a blood sample indicating a blood alcohol concentration of .16 percent by weight was taken at approximately 2:04 a.m. The arresting officer took possession of Zietz's driver's license pursuant to Section 39–20–03.1, N.D.C.C., and thereafter Zietz requested and received an administrative hearing pursuant to Section 39–20–05, N.D.C.C.

After hearing the evidence presented, the administrative hearing officer made the following findings of fact, conclusions of law, and decision:

"The findings of fact: These are the decisional facts. A little before 1:16 a.m., Mr. Gary Carl Zietz was driving a motor vehicle on a Minot street and hit a man. Officer Stephen Narum smelled alcoholic beverage on Zietz's breath. Zietz had slurred speech and did poorly on field tests. Then Narum arrested him for DUI at 1:45 a.m. Myrna Sorensen, MT, withdrew blood from Zietz at 2:04 a.m. The blood specimen had a blood-alcohol concentration of 0.16 percent by weight.

"Conclusions of law: (1) Narum had reasonable ground to believe Zietz had been driving a vehicle in violation of 39–08–01 or equivalent ordinance; (2) Narum arrested Zietz for DUI; (3) Sorensen withdrew blood from Zietz in accordance with section 39–20–02, N.D.C.C.; and (4) Zietz's test results show he had then a blood-alcohol concentration of at least ten one-hundredths of one percent by weight.

"Decision of hearing officer: suspend for a period of 91 days."

The district court reversed the hearing officer's decision, and the Commissioner has appealed.

An administrative hearing for the suspension of a driver's license is civil in nature and is limited in scope by Section 39–20–05(2), N.D.C.C., to the following issues:

"(1) 'whether the arresting officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle in violation of 39–08–01 or equivalent ordinance;'

"(2) 'whether the person was placed under arrest;'

"a. That person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving.

"b. That person is under the influence of intoxicating liquor."

---

1. Section 39–08–01, N.D.C.C., provides:

"1. A person may not drive any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

"(3) 'whether the person was tested in accordance with section 39–20–01 or 39–20–03 and, if applicable, section 39–20–02; and'

"(4) 'whether, based on a review of the test procedures and results, the person had a blood alcohol concentration of at least ten one-hundredths of one percent by weight.' " *Dodds v. North Dakota State Highway Comm'r*, 354 N.W.2d 165, 167 (N.D.1984).

An appeal from a district court judgment involving a license suspension by the Commissioner under Section 39–20–04 or 39–20–04.1, N.D.C.C., is governed by the Administrative Agencies Practice Act [Ch. 28–32, N.D.C.C.], and, in reviewing the evidence, we look to the record compiled before the hearing officer and not the findings of the district court. *Dodds v. North Dakota State Highway Comm'r, supra.* In *Dodds, supra,* 354 N.W.2d at 168–169, we said:

"Our role in reviewing the factual basis of an administrative decision is limited to a consideration of the following questions: '(1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law?' *Asbridge,* 291 N.W.2d 739 *supra.* This Court also considers whether the decision violates constitutional rights or is not in accordance with the law. *See* § 28–32–19, N.D.C.C. We exercise restraint in reviewing the findings of an administrative agency; we do not substitute our judgment for that of the agency. *Asbridge, supra,* 291 N.W.2d at 744."

In the instant case, the district court's memorandum opinion provided:

"Testimony fails to show the Petitioner was under the influence of intoxicating liquor at the critical time. The time lag between the alleged driving and the request was so far removed that a person who was subsequently found to have .16 at the time of the blood test, and presumed to have been under the influence, may have had only a fraction at the time of his driving that gave rise to the request for testing. Propectively [sic], from a given time a person may be under the influence of intoxicating liquors, but at a given time earlier he may not be. The record shows the prospective aspect, but not the earlier, and the earlier time is the most important for that is the point of occurrence from which everything later flowed. We do not have sufficient factors in the equation to solve for 'X.' "

Both parties interpret that language to mean that the district court concluded that the arresting officer did not have probable cause to believe that Zietz had been driving a motor vehicle in violation of Section 39–08–01, N.D.C.C. The Commissioner asserts that the arresting officer had probable cause to believe Zietz was driving a motor vehicle in violation of Section 39–08–01, N.D.C.C. Zietz contends that evidence of being under the influence at 1:45 a.m. was not sufficient to establish that he was under the influence at the time of the accident, about 1:16 a.m., and therefore the arresting officer did not have probable cause to believe that he was driving a motor vehicle in violation of Section 39–08–01, N.D.C.C.

The term "reasonable grounds" as used in Section 39–20–05, N.D.C.C., is synonymous with the term "probable cause". *Moser v. North Dakota Highway Comm'r,* 369 N.W.2d 650 (N.D.1985); *Witte v. Hjelle,* 234 N.W.2d 16 (N.D.1975). In *Witte v. Hjelle, supra,* 234 N.W.2d at 20, we stated that probable cause exists when the facts and circumstances within a police officer's knowledge and of which he had reasonable trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed. *See also City of Langdon v. Delvo,* 390 N.W.2d 51 (N.D. 1986); *Moser v. North Dakota State Highway Comm'r, supra.* In *Witte v. Hjelle, supra,* 234 N.W.2d at 20, we quoted with approval from *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879

(1949), the following standard for determining probable cause:

> " ' "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." ' "

In *Moser v. North Dakota State Highway Comm'r, supra,* we concluded that an arresting officer had reasonable grounds to believe that Moser had been driving a motor vehicle in violation of Section 39–08–01, N.D.C.C. In that case the arresting officer did not see Moser driving the motor vehicle involved in a rollover, and no one was present at the accident scene when the arresting officer arrived. However, Moser arrived at the scene ten minutes later and admitted he was the driver of the vehicle and had been drinking beer and lost control of the vehicle. We noted that the arresting officer indicated that he could smell alcohol on Moser's breath and that Moser's eyes were bloodshot. We stated that that evidence "coupled with the lack of any suggestion of another cause of the accident, ... [was] 'sufficient to warrant a man of reasonable caution in believing' " that the offense of driving in violation of Section 39–08–01, N.D.C.C., had been committed.

▆ In the instant case, Zietz admitted that he was driving the car when the accident occurred; that he had several drinks between 9 p.m. and 12:30 a.m. that evening but that he had not consumed any alcoholic beverages after 12:30 a.m.; and that he had not consumed any alcoholic beverages after the accident. The hearing officer found that Zietz performed "poorly" on the field tests and that finding is entitled to deference. *Dodds, supra.* There is noth-

ing in the record to indicate that Zietz's rate of consumption of alcohol between 9 p.m. and 12:30 a.m. was in an irregular manner, or that he had consumed several drinks shortly before 12:30 a.m.[2] In the absence of any such evidence and applying the practical, nontechnical rule of probable cause, we conclude that the admissions by Zietz coupled with the arresting officer's observation that Zietz's speech was slurred and the results of the field sobriety test were sufficient to warrant a person of reasonable caution to believe that the offense of driving in violation of Section 39–08–01, N.D.C.C., had been committed.

The district court judgment is reversed and the decision of the hearing officer is reinstated.

VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

LEVINE, Justice, specially concurring.

While I agree with most of the rationale and with the result of the majority opinion, I believe the majority leans too heavily on the *Moser* case to support its conclusion. In *Moser* there was no suggestion of another cause for the accident which occurred. In the instant case there is an obvious suggestion of another cause for the accident which occurred—the possible negligence of the pedestrian. Notwithstanding this distinction, I agree that the police officer here had probable cause to believe there had been a violation of NDCC § 39–08–01.

Zietz argues that we cannot take judicial notice of the rate of elimination of alcohol from the blood system and because there was no such evidence there was no probable cause to believe that Zietz was under the influence when he drove his vehicle some thirty minutes earlier. Even if there were logic to this argument, I accept the

---

2. *See* Tarantino, *Defending Drinking Drivers,* § 201 (1986), for a discussion of the rate of absorption of alcohol into the blood system and the rate of elimination of alcohol from the blood system. In this respect the Legislature has specifically stated that a person may not drive a vehicle on a public highway or private area to which the public has a right of access if that person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight on a chemical test performed within two hours after the driving. Section 39–08–01(1)(a), N.D.C.C.

wisdom of Oliver Wendell Holmes, Jr.: "The life of the law has not been logic; it has been experience." I find myself unable to disregard experience and common sense which tell me that one who has not drunk for sixty minutes or so, but smells of alcohol, has slurred speech, and fails a field sobriety test, and who was admittedly driving some thirty minutes earlier, could reasonably be held to have been driving while under the influence. Besides, logic and experience are not mutually exclusive. An argument that pits the one against the other must fail for that reason alone.